HERRIN, RESPONDENT, *v.* SIEBEN ET AL., APPELLANTS.

(No. 3,170.)

(Submitted September 18, 1912. Decided October 19, 1912.)

[127 Pac. 323.]

*Livestock—Uninclosed Grazing Lands—Trespass—Injunction—*
*Ways of Necessity—Right to Select—Railroad Grant—Dam-*
*ages—Excessive Verdict.*

Appeal and Error—Conflict in Evidence—Review.

1. Subject to review by the district court on motion for new trial, the determination of questions of fact on conflicting evidence is exclusively a matter within the province of the jury; the result thus reached is conclusive on appeal.

Opinion Evidence—Admissibility.

2. The statement of a witness, after testifying that he had been working with sheep in various capacities for ten or twelve years; that he was acquainted with plaintiff's lands, damages for the depasturing of which were sought from defendant; that he was able by reason of his experience to state the value of lands for herding sheep thereon; that it required a certain number of acres to support a single sheep, etc.; that in his opinion the reasonable value of the feed which he had seen upon the lands in question during the fall of a certain year and the following spring amounted to a specific sum: *held* properly admitted in evidence, his knowledge and experience having qualified him to answer.

Trespass on Uninclosed Lands—Livestock—Duty of Owner.

3. The owner of livestock may not knowingly and willfully drive or herd them upon the lands of another even though they are not protected by an inclosure; in order to avoid encroaching upon them he must at his peril ascertain the boundary lines of the latter's property.

Real Property—Way of Necessity—Right to Select.

4. Where one person grants to another land to which there is no access except by passing over other land of the former, a way of necessity passes by the grant, the grantor having the right to designate it. In case of failure or refusal to do so, however, the grantee may make his own selection; in either instance the party making the selection must do so with due regard to the rights of the other.

Same.

5. A way of necessity is impliedly reserved in favor of the grantor where he has no means of access to other lands owned by him, except by passing over those granted, the grantee having the privilege of selecting the way, such privilege, limited by the rule of necessity, passing to the grantor if the grantee fails or refuses to exercise his right in this regard.

Public Lands—Railroad Grant—Implied Reservation of Way of Necessity.

6. *Held*, under the rule stated in paragraph 5, *supra*, that a way of necessity over the odd-numbered sections was impliedly reserved

by the federal government, in its land grant to the Northern Pacific Railroad Company, not only in its own favor, but also that of persons desiring to go upon the even-numbered ones for purposes allowed by law, such as making settlement, cutting timber, exploring for mineral deposits, grazing stock, *etc.*

Same—Livestock—Way of Necessity—Instructions—Proper Refusal.

7. An instruction which, if given, would have authorized the jury, in an action for damages for trespass on certain sections of land purchased by plaintiff from the Northern Pacific Railway Company, to infer that the defendants had a right, in order to reach unappropriated government lands, to cross at will with their sheep, held in herd, over plaintiff's lands, without regard to the area incidentally depastured or the time consumed in effecting the passage and unlimited by the rule of necessity, was properly refused.

Livestock—Trespass—Depasturing Lands—Excessive Damages.

8. Compensatory damages awarded in an action to recover for the use and occupation of seven and one-half sections of grazing lands for eight and one-half months, scaled from $1,200 to $600, where the complaint did not allege and the evidence did not show any special or permanent injury, nor any detriment to plaintiff other than the loss of the use of the lands during the time of their occupancy by defendants.

Same—Trespass—Injunction—Selection of Way—Procedure.

9. *Held,* that the granting of a perpetual injunction which by prohibiting defendants from driving their sheep over any portion of plaintiff's lands, surrounding unappropriated government sections, denied the former access to the public domain for grazing purposes, was error; *held,* further, that the court should have required plaintiff to select and tender to defendants ways for their use, and in case of refusal, permitted defendants to select such ways; in case of failure on their part to act, it should have heard evidence and located and defined the ways, having due regard to the necessities of the case, and thereupon issued an injunction limiting the rights of defendants according to the determination thus made.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by H. J. Herrin against Henry Sieben and another, copartners as Sieben & Grimes. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Modified and remanded conditionally.

*Mr. S. A. Balliet,* and *Mr. E. A. Carleton,* for Appellants, submitted a brief, and argued the cause orally.

*Mr. A. P. Heywood* and *Mr. O. W. McConnell* submitted a brief in behalf of Respondent; *Mr. McConnell* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for trespass on land. On October 5, 1910, the plaintiff became the owner by purchase from the Northern Pacific Railway Company of seven and a half sections of land in Lewis and Clark county, lying within the limits of the grant originally made to the Northern Pacific Railroad Company. These sections connect with and adjoin other lands owned, respectively, by the plaintiff and the defendants. The plaintiff and the defendants are engaged in the business of buying, raising and selling sheep, the defendants being copartners. Up to the time of plaintiff's purchase he and the defendants had been accustomed to use these lands, and also the intervening government sections, as pasture for their sheep whenever it suited their convenience, all of them being uninclosed. Defendants knew of plaintiff's purchase, and that his purpose in making it was to provide pasture for his sheep. Soon after the purchase, plaintiff warned them not to use the lands so purchased. On May 17, 1911, he brought an action, charging that between October 5, 1910, and May 12, 1911, the defendants, without his consent and without right, had herded and pastured their sheep upon these lands, with the result that the grass and herbage thereon were entirely eaten off and destroyed, to his damage in the sum of $2,000, and demanding judgment for that amount and for costs. On June 23, 1911, he brought a second action, the purpose being to recover damages for trespasses alleged to have been committed between May 13 and June 19. In his complaint he alleged that the conduct of defendants was malicious. He also alleged that the defendants were constantly repeating their acts of trespass and were threatening to continue them, and that the damage thus accruing and threatened could not be adequately compensated in damages. He demanded judgment for $1,250 damages, with costs, and a perpetual injunction. In the first action, the defendant tendered issue by a denial of all the material allegations of wrongdoing contained in the complaint. In the second, besides tendering a like issue, they alleged, in sub-

stance, that the action had not been brought in good faith to recover damages for wrongs committed by the defendants, but that the plaintiff had acquired lands to which he claims title, for the sole purpose of compelling the defendants to remove their flocks from the portion of the range which they had heretofore been accustomed to use, and to desist from pasturing them upon the even-numbered government sections, which are open to the use of all stockmen alike for grazing purposes. Upon these allegations there was issue by reply. The two causes were by stipulation of counsel consolidated and tried as one. The plaintiff recovered a verdict for $1,200 as compensatory and $100 as punitive damages. Judgment was entered for this amount, with costs, and also for a perpetual injunction. From the judgment and from the order denying their motion for a new trial the defendants have appealed. They assign insufficiency of the evidence to justify the verdict, errors in rulings of the court upon questions of evidence, and in submitting and refusing certain instructions to the jury. They also contend that the verdict is excessive, and that the injunction feature of the judgment is too broad.

1. We shall not attempt to set out the evidence and examine it in detail. There was no controversy but that the plaintiff became the owner of the seven and one-half sections of land described in the complaint at the time alleged. As to whether the defendants herded their sheep on them at all, or did so through inadvertence because of their lack of acquaintance with the boundary lines, or because of their indisposition to ascertain their location, or, finally, whether they did so purposely and maliciously, the evidence is in hopeless conflict. It was [1] exclusively the province of the jury to determine all of these questions, subject to review by the court on the motion for a new trial. The determination thus reached we must accept as final. There was evidence which justified the conclusion that the defendants subsequent to October 5, 1910, and prior to June 23, 1911, had depastured substantially the whole area of plaintiff's lands, and that during this time he realized no benefit from them. There was evidence, also, that they con-

tinued this course after the beginning of the first action, and were pasturing a portion of the lands at the time the second action was brought.

2. The witness Wills, called for the purpose of testifying as to the value of the pasturage, stated, in substance, that he had been working with sheep for ten or twelve years, herding, tending [2] camp, *etc.*, that he had been employed by the plaintiff from October, 1910, up to the time of the trial; that his duties had been to select pasture for plaintiff's sheep, and to change them from time to time as circumstances required; that for this reason he had made particular examination of plaintiff's lands and had become familiar with them; that he was able, by reason of the experience and knowledge thus acquired, to state the value of the lands for the herding of sheep; that it required from two to four acres to support a single sheep; and that he had always understood that it cost fifty cents per head to pasture a sheep for the season. He was then asked to state what in his opinion was the reasonable value of the feed which he had seen there during the fall of 1910 and the spring of 1911. His answer was that he thought the plaintiff had suffered damage to the amount of $2,500. Counsel for defendants objected and moved to strike out the evidence on the ground that the witness had not shown himself qualified to answer. The court overruled the objection. There was no error. Assuming that the answer was intended to be and was responsive to the question (the objection was not made that it was not), the knowledge and experience of the witness qualified him to answer. (*Holland* v. *Huston,* 20 Mont. 84, 49 Pac. 390; *Porter* v. *Hawkins,* 27 Mont. 486, 71 Pac. 664; *Sullivan* v. *Girson,* 39 Mont. 274, 102 Pac. 320.) In view of other evidence submitted to the jury, we think the witness had an exaggerated notion of the value of pasturage. Nevertheless the evidence was competent, though perhaps entitled to very little weight. The same disposition must be made of the ruling upon the competency of the evidence of the witness Roy Woods, whose answer was the same as that of Wills.

3. Such of the other rulings upon questions of evidence as affect the merits of this controversy will be disposed of by a determination of the fundamental question of law which is presented by the theory of the case adopted by the court in submitting instructions to the jury. It is comprehended in the inquiry: By what rule must members of the community be governed with reference to uninclosed lands held by private ownership, when they seek to avail themselves of the use, for the pasturage of their stock, of the adjoining and unappropriated sections belonging to the federal government? To what extent may they trespass upon, or make use of, the adjoining private lands in order to gain access to the public lands? Must they at their peril ascertain the boundary lines and limit their encroachments upon the adjoining lands entirely to a reasonable way of necessity for crossing them, or may they use them at will without regard to private ownership in them, until such time as the owner so definitely marks their boundaries as to give notice of their location? In instructing the jury, the court adopted the theory that one who seeks to make use of uninclosed public lands must at his peril ascertain the boundaries of adjoining private owners, and that, if the circumstances show that he has herded or willfully driven his stock upon such adjoining lands, he is liable to the owner for such damage as he has caused him.

The privilege to use the unappropriated public lands for pasturage has become so confirmed by the custom of the people, recognized and acquiesced in by the federal government (*Buford* v. *Houtz*, 133 U. S. 320, 33 L. Ed. 618, 10 Sup. Ct. Rep. 305), that it is everywhere regarded as a valuable right. The value of agricultural and other lands held by private ownership in many localities is often greater because of adjacent areas of great extent, outside of government reservations, which up to the present time have not been found useful for any other than grazing purposes. Those who can conveniently reach them can and do use them by common right at great profit.

Let it be assumed that because of the acquiescence of the Northern Pacific Railway Company in the use of its lands by the plaintiff and defendants they had acquired a license to so use

them up to the time of plaintiff's purchase; yet the purchase of them by the plaintiff, with the knowledge of defendants, operated as a revocation of defendants' license, and from that time forward plaintiff was entitled to the exclusive use of them, just as other lands owned by him.

Under the common-law rule, the owner of animals was required to keep them within his own inclosures, and if they were permitted to stray upon the lands of another, though such other lands were not inclosed, the owner was held liable in trespass for such damage as they did. The ideal invisible boundary, existing only in contemplation of law, was a legal fence sufficient to protect the owner in the exclusive right of occupation and use, a right which is an attribute of private ownership. (3 Blackstone's Commentaries, 209, 211; 1 Addison on Torts, sec. 375; *Bileu* v. *Paisley*, 18 Or. 47, 4 L. R. A. 840, and notes, 21 . Pac. 934; 2 Cyc. 392; *Monroe* v. *Cannon*, 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863.) The conditions prevailing in the public land states early led to a modification of this rule. Under statutory provisions in many, if not all, of them the owner of animals may permit them to run at large. He is not liable for damage done by them upon lands of another, unless the owner of such other lands has them inclosed by a legal fence. The provisions of our own statutes on the subject are found in sections 2082 and 2090 of the Revised Codes, and apply to all domestic animals, except those enumerated in section 8836, which the owner must keep within his own inclosures under the common-law rule. But these provisions have no application to animals in charge of a herder. They were construed in *Monroe* v. *Cannon, supra,* and it was held that where the defendant caused his sheep to be herded upon lands which he knew belonged to the plaintiff, though the lands were not inclosed, he was liable for the damage done by them. This decision in effect declared that the purpose of the legislation was to condone trespasses committed by animals lawfully running at large, and that the common-law rule is left otherwise unchanged. It has uniformly been recognized as establishing the rule of decision in this state. (*Beinhorn* v. *Griswold,* 27 Mont. 79, 94 Am. St.

Rep. 818, 59 L. R. A. 771, 69 Pac. 557; *Clemmons* v. *Gillette,*
33 Mont. 321, 114 Am. St. Rep. 814, 83 Pac. 879; *Musselshell
Cattle Co.* v. *Woolfolk,* 34 Mont. 126, 85 Pac. 874; *Rea Bros.
Sheep Co.* v. *Rudi, ante,* p. 149, 127 Pac. 85.)    The result of
[3]    it is that the owner of animals may not knowingly and
willfully drive or herd them upon the lands of another, whether
such lands are protected by an inclosure or not, and that to
avoid encroaching upon his neighbor he must at his peril ascer-
tain the line at which his rights end and his neighbor's begin.
Therefore, though one may have been accustomed under an im-
plied license to herd or drive his animals upon lands theretofore
belonging to the Northern Pacific Railway Company and to use
them in common with others, as soon as the license has been
withdrawn, they are protected by the same rule of law as are
other lands held by private ownership.    So, when the plaintiff
in this case became the owner of the lands in controversy, de-
fendants, having knowledge that he had purchased them, were
bound at their peril not to encroach upon them, and, to avoid
doing so, it was incumbent upon them to ascertain the lines and
govern themselves accordingly.    The theory adopted by the court
was correct; and, in so far as counsel have directed criticism at
the instructions in this regard, they were correct and as fair
and liberal toward the defendants as they could ask.    Whether
the plaintiff had marked his lines so that they could readily be
seen was an immaterial inquiry.    The rulings upon the evidence
introduced on this subject could not have resulted in prejudice
to defendants.

But counsel insist that the court erred in refusing to give
to the jury an instruction embodying the provisions of sections
8474 and 8475 of the Revised Codes.    Section 8474 declares: "It
shall be unlawful for any person or persons to willfully drive,
or cause to be driven, any livestock held in herd, on or over
any field, ranch property or valid claim in process of title under
any of the land laws of the United States, or under lease from
the state of Montana, whether the same be fenced or not; *pro-
vided,* that any lands so owned, or under process of title, or
under lease, and not fenced, shall be clearly defined by suitable

monuments or stakes, and plow furrows, with printed or written notices indicating the lands so held." Section 8475 provides for the imposition of a fine when, upon complaint of the owner, a defendant is found guilty of any of the acts declared unlawful in section 8474. These provisions do not affect the question at issue in this case. They merely declare unlawful and punish as a misdemeanor the driving or herding of animals upon the uninclosed lands of another when the boundaries are marked as therein provided. They do not, either in terms or by implication, annul the rule of civil liability for trespasses falling within the principle of the decision in *Monroe* v. *Cannon,* and reaffirmed in the other cases cited *supra.*

The defendants assign error upon the refusal by the court to give the following instruction: "(7) The court instructs the jury that if you find from the evidence that the plaintiff is the owner of any or all of the lands described in his complaints, and that said lands are so situated as to inclose a part of the public domain, whereby such part of the public domain is rendered inaccessible to those having occasion to pasture or graze their flocks or herds thereon, then in such event the defendants would have the right to cross said lands of the plaintiff in a reasonably prudent manner in order to obtain access to said domain for grazing purposes. And if you find from the evidence in this case that the defendants did drive sheep across some of the lands of the plaintiff, in order to reach those portions, if any, of the public domain, which were surrounded by the lands of the plaintiff, then in such event the plaintiff could not recover for any damages so occasioned."

The rule is well settled that, where one person grants to another
[4]   land to which there is no access except by passing over other land of the grantor, a way of necessity passes by the grant. (*Brigham* v. *Smith,* 4 Gray (Mass.), 297, 64 Am. Dec. 76; *Palmer* v. *Palmer,* 150 N. Y. 139, 55 Am. St. Rep. 653, 44 N. E. 966.) So, where the grantor has no means of access to other lands owned by him except by passing over the lands granted, a way of necessity is impliedly reserved in his grant. (*Brigham* v. *Smith, supra; Schmidt* v. *Quinn,* 136 Mass. 575;

*Adams* v. *Marshall,* 138 Mass. 228, 52 Am. Rep. 271; *Pierce* v. *Selleck,* 18 Conn. 321.) In the first instance the grantor has the right to designate the track or way, having due regard to the rights of both parties; but, if he fails or refuses to exercise the right, the grantee may make his own selection, and will be protected in the use of it, provided he does not encroach upon the land of his grantor further than circumstances render it necessary. (*Palmer* v. *Palmer* and *Schmidt* v. *Quinn, supra.*) By parity of reasoning, the privilege of selection in the second instance is in the grantee. If he fails or refuses to exercise his [5] privilege, the grantor may make the selection, but he will be subject to account for any encroachment upon his grantee beyond what the necessity of the case requires.

The grant by the federal government to the railroad company, so far as the question at issue is concerned, does not differ from a grant by one private person to another. It is impossible to gain access to the even-numbered sections belonging to the government except by going over some portion of the odd sections. [6] It must follow that there is an implied reservation by the federal government of a way of necessity, not only in favor of the government itself for access to these sections for any use to which it may wish to devote them, but also in favor of the private citizens who wish to go upon them for the purpose of making settlements thereon, or to cut timber when they may lawfully do so, or to explore them for mineral deposits, or, finally, to use them for grazing purposes. The contrary view would vest in the railway company and its grantees a monopoly of all the public lands within the limits of the grant.

Since there was some evidence submitted to the jury controverting the evidence introduced by the plaintiff tending to show [7] that defendants held their sheep in herd upon his lands, and tending to show that defendants merely drove the sheep over them in order to reach the government sections, the court, being properly requested, should have submitted an instruction defining the relative rights of the parties in accordance with the principles stated above. The difficulty with the instruction quoted, however, is that it does not limit the right of crossing

by the rule of necessity. It would have authorized the jury to infer that the defendants had a right to cross over plaintiff's lands at will, without regard to the area of land incidentally depastured, and without regard to the time consumed in effecting the passage. For this reason the instruction was erroneous, and therefore was properly refused.

4. We have already referred to the testimony of the witnesses Wills and Woods. There was testimony tending to show the [8] annual rate at which the railway company and the state of Montana have heretofore leased their grazing lands in the vicinity where the plaintiff's lands lie. In some cases these rates have been as low as $40 per section, and in others as high as $80 per section; the price demanded depending upon the quality of the particular lands. Some witnesses testified that the current rate was $50 per section. There was some evidence as to the annual rate per head which is usually charged for pasturing sheep, and the number of sheep owned by the defendants. In estimating the amount of compensatory damages the jury evidently discarded all other evidence as to the extent of the damage and took as the basis of their calculation $80, the highest average rate paid per section for grazing lands leased by the state, and allowed plaintiff for the use and occupation of all the lands in controversy at this rate for full two years. Now, it is apparent that the defendants did not occupy any of the lands during the winter months; but assuming that they occupied the whole of them for the entire time from October 5, 1910, to June 19, 1911, eight and one-half months in all, the value of the use and occupation would be at this rate $680. If from this sum there should be deducted the value of the use for three winter months, there would remain $440. Since there is no allegation in either complaint, nor any evidence, of special or permanent injury, nor any suggestion of any detriment to the plaintiff other than the loss of the use of his lands during the time of their occupancy by the defendants, we are of the opinion that, considering the entire evidence, one-half of the amount allowed by the jury is sufficient to reimburse the plaintiff for all actual detriment suffered by him.

. 5. The injunctive feature of the judgment is open to objection, [9] for the reason that it does not recognize any right in the defendants to have access to the government sections. It prohibits them, not only from driving or herding their sheep on plaintiff's lands, but also from driving over or across any portion of them, in order to reach the government sections. The defendants' right to the use of them is not disputed, nor, since they are surrounded by plaintiff's lands, can defendants' right to ways over the latter be questioned. Before issuing the injunction, the court should have required the plaintiff to select and tender to the defendants ways over his lands for their use. In default of this it should have permitted the defendants to select such ways. In case they did not do so, the court should have heard evidence and located and defined them, giving due attention to the conformation of the surface so that defendants should not suffer deprivation, and the plaintiff should not be further disturbed in his possession than the necessities of the case require. If the surface is such as to permit it, a way of reasonable width from one government section to another should be fixed in each case at the point where the corners join. If because of the broken character of the surface this should be ascertained not to be practicable in any instance, then another way should be selected of such width as may be necessary.

The cause is remanded to the district court with directions: (1) To grant the defendants a new trial unless within thirty days after the filing of the *remittitur* in the district court, the plaintiff shall consent in writing that the judgment, so far as it awards compensatory damages, be reduced to $600. If such consent is given, the judgment shall be modified accordingly as of the date of its original entry, and, together with the order denying the motion for a new trial, will stand affirmed. The part of the judgment relating to costs in the district court, and to punitive damages, is not to be disturbed. (2) To set aside the injunction, and, unless the parties can agree upon ways to be used by the defendants over plaintiff's lands for access to the government sections, to hear evidence and ascertain such ways in accordance with the suggestions made in this opinion,

and to issue an injunction limiting the rights of the defendants accordingly. The defendants shall recover the cost of printing their brief and their filing fee in this court.

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument, and takes no part in the foregoing decision.