[No. 44902-8-I. Division One. October 30, 2000.]

GRANITE BEACH HOLDINGS, L.L.C., ET AL., *Appellants*, v. THE DEPARTMENT OF NATURAL RESOURCES, ET AL., *Respondents*.

*Charles A. Willmes* (of *Preg O'Donnell & Gillett, P.L.L.C.*) and *Gregory L. Ursich* (of *Cullen & Bernstein*), for appellants.

*Christine O. Gregoire, Attorney General*, and *James R. Schwartz, Assistant*, for respondent Department of Natural Resources.

*Roy F. Kussmann* (of *McGavick Graves, P.S.*), for respondent Manke Lumber Company.

*Susan Delanty Jones* and *Robert W. Ferguson* (of *Preston Gates & Ellis*), for respondent Land Conservancy of Seattle and King County.

KENNEDY, J. — The appellants, Granite Beach Holdings,

LLC, Roger W. Sherman, and Arlene R. Tande, purchased property that is completely surrounded by State trust land and can be accessed only by logging roads that run across the State's land. The Land Conservancy of Seattle and King County (The Land Conservancy) and Manke Lumber Company, Inc. (Manke) hold properties with easement rights to cross State land; however, these easements did not extend to the appellants' property.[1]

The appellants requested an easement from the State Department of Natural Resources (DNR) that would facilitate development of a residential subdivision on the appellants' property. The State determined that its timber management plans precluded granting the appellants' request for such an easement, while it continued the process to approve the appellants' application for a resource management easement. The appellants filed suit against the State, The Land Conservancy, and Manke, for the purpose of obtaining unlimited access to their property across State and private land under several theories, including implied easement, prescriptive easement, condemnation of interests in private easements, and inverse condemnation.

The trial court dismissed all of the appellants' claims on summary judgment. We affirm, concluding that (1) an implied reservation in favor of the United States of America at the date of original ownership may not be found without evidence of congressional intent to imply a reserved easement; (2) appellants fail to show sufficient continuous use necessary to have acquired a prescriptive easement; (3) the appellants cannot obtain joint uses of private ways of necessity that would expand the uses of the condemnees, nor can they obtain full access to their property by use of

---

[1] The Land Conservancy purchased property previously owned by R&S Lumber, a sole proprietorship, while this action was pending in King County Superior Court. Thereafter, by stipulation of the parties, The Land Conservancy was substituted as a party defendant, and R&S Lumber was dismissed from the action. During the pendency of this appeal, The Land Conservancy released and quit-claimed all its interest in the easement to Washington State Department of Natural Resources, the owner of the servient estate, and filed a motion in this court seeking to be dismissed as a party respondent. We have granted the motion by a separate order filed simultaneously with this opinion.

the easements held by The Land Conservancy and Manke; and (4) there is no unconstitutional taking where the claimants cannot establish a right to cross the adjoining State lands in order to develop their property for a residential subdivision, let alone a right that supersedes the statutory authority of the DNR to manage State trust lands.

## FACTS

On July 5, 1996, the appellants, Granite Beach Holdings, LLC, and Roger W. Sherman and Arlene R. Tande, purchased land in a forested rural area of King County within Section 26, Township 23 North, Range 9 East. The original title for Section 26 was conveyed by the United States of America (USA) through patents in 1919 and 1921. Other sections of Township 23 North were conveyed by the USA on earlier dates under the Homestead Act, and under patents which provided lands to the Northern Pacific Railway Company.

When the appellants purchased their land in Section 26, the State of Washington owned property in Sections 14, 15, 16, 23, 34 and 35, Township 23 North, Range 9 East, which surround Section 26. The State acquired those properties through several land exchanges. The appellants' property is, therefore, surrounded by Washington State trust lands that are managed by the DNR. The State's land at issue in this case is administered for the benefit of different trusts established at statehood or under chapter 76.12 RCW (Forest Board Lands).

Granite Creek Road is a logging road that has been extended into this forest area over time, and it currently extends to the appellants' property in Section 26, from the north. Section 26 had, at a previous time, also been accessed from the south by a logging road (the South Side Road) built between 1958 and 1964. The South Side Road has not been used since 1980, and has since become overgrown with native vegetation, which renders it unfit for travel. The State's land includes most of the land over

which the Granite Creek Road and the South Side Road travel. Prior to the appellants' purchase of land in Section 26, the State had a cooperative policy toward use of the Granite Creek Road across State property whereby those persons using the road would help maintain the road. The previous owner of the State's land, Weyerhaeuser, had permitted the adjoining landowners to use the road to harvest timber.

In 1964, Richard Zemp bought property in Section 26; he is the oldest living owner of property that is the subject of this lawsuit. Zemp knew that the property was landlocked when he bought it. He worked out a "gentleman's agreement" with Weyerhaeuser providing mutual access to both parties' properties. Zemp testified that it was "simply a handshake agreement and no consideration was ever asked." Clerk's Papers at 749. Zemp sold the property to Tye River Tree Farms (Tye River) in 1966, and he arranged for a permit from Weyerhaeuser for Tye River to access the property.

Tye River purchased the property for investment and personal recreation purposes. Norman Cromarty, one of the principals of Tye River, testified that he used South Side Road to look at timber on the property two or three times during the 20-year period that Tye River owned the property. In 1987, Tye River transferred the property to Jim Campbell, Robert Campbell, and Thomas Campbell. Tye River informed the Campbells that there was no formal easement to the property, and that they would need to negotiate a permit to use the road.

In 1991, the State offered the Campbells an opportunity to obtain an easement over Granite Creek Road to access Section 26 from the north, if the Campbells would share in the costs of maintaining the road. The Campbells did not accept that offer. Jim Campbell testified that the Campbells used the South Side road only three times during their nine years of ownership. In 1996, Campbell sold the property to the appellants.

Michael Mitchell, managing agent for Granite Beach

Holdings, was the principal negotiator for the property. His business involves buying properties that are surrounded by another landowner, referred to as "in-holdings," where government or conservation groups are buying land. He increases the appraised value of the in-holding by making "paper" improvements such as platting, and then sells it to the government or conservation groups at the enhanced value. Mitchell was informed that there was a problem with legal access to this property by both the title company officer who did the title review, and by the sellers. And, in March 1996, prior to appellants purchasing the property, a DNR district manager advised Mitchell about the DNR easement application process.

In May 1996, the State learned that Granite Creek Road was causing environmental damage to Granite Creek, which parallels the road. The State had the option of either deactivating the road or bringing the road up to forest practice standards, at an estimated cost of $100,000. Because the abutting lands would not be logged for many decades, the State opted to deactivate the upper reach of the road where it parallels the creek.

In October 1996, Mitchell approached the State to accept the easement offer previously made to the Campbells. The DNR advised Mitchell that the offer was no longer open because of the significant expense now required to bring the road up to forest practice standards. Later that month, Mitchell returned to the DNR and submitted $845 and an application for an easement over Granite Creek Road for resource management purposes. The DNR subsequently returned Mitchell's money and explained by letter the process that the DNR would employ regarding future use of the road.

In February 1997, the DNR sent Mitchell another letter informing him that the State would not participate in continued maintenance of the road beyond property in Section 14, which was owned by Manke, because the DNR did not need the road, the road represented a continuing liability to the State, and the DNR could not justify the cost

to maintain the road. The DNR explained that it would nonetheless consider options other than abandoning the road. The DNR outlined the requirements to process Mitchell's application and informed him that he must submit proof of ownership, a report detailing alternative access routes, an engineered road plan detailing the road work to be performed, and a management plan detailing the expected use of the road. In July 1997, the DNR informed Mitchell that a watershed analysis was also needed to process his application.

In October 1997, the DNR restricted access over Granite Creek Road to control damage to the road and protect the environmental quality of the creek. As of that time, Mitchell had not submitted any of the engineering reports, a maintenance plan or watershed study in support of his easement application.

In December 1997, the appellants filed suit against the State of Washington, The Land Conservancy's predecessor, and Manke. In 1997, The Land Conservancy's predecessor owned property in Sections 15, 16, 23, and 24 of Township 23 North, and Manke owned property in Sections 14, 15, and 16 in Township 23 North. The appellants sought to condemn a private way of necessity for ingress and egress over the easement rights held by Manke and The Land Conservancy's predecessor—neither of which held easement rights extending across State land to the appellants' land in Section 26—pursuant to RCW 8.24.030.

In their claims against the State, the appellants argued that (1) they are entitled to an order quieting title to an easement over the South Side Road and Granite Creek Road; (2) they are entitled to an order prohibiting the State from conducting work on Granite Creek Road until an agreement is reached between the parties regarding such work; (3) the plaintiffs' predecessors in interest's use of Granite Creek Road and the South Side Road created a prescriptive easement benefiting the plaintiffs; (4) they are entitled to easements by implication providing them the use of Granite Creek Road and the South Side Road due to

unity of title to Section 26 in the United States Government; (5) they are entitled to an injunction prohibiting the State's obstruction of the plaintiffs' use of Granite Creek Road and the South Side Road; and (6) the State's denial of easements providing access to their land in Section 26, "for all lawful uses," constitutes an unconstitutional restriction or impairment of the plaintiffs' property interests. *See* Second Am. Compl. 8-10, Clerk's Papers at 193-95.

The State continued the process to approve the easement request for a resource management easement. However, the State determined that an easement that would facilitate a residential in-holding within the forest area would conflict with the DNR's timber management plans for the trust lands.

The trial court dismissed all of the appellants' claims on summary judgment. The appellants assign error to the court's dismissal of their claims pertaining to an implied easement stemming from unity of title in the USA, prescriptive easement, condemnation of interests in private easements, and inverse condemnation.

## DISCUSSION

Standard of Review

When reviewing an appeal of a summary judgment order, the appellate court engages in the same inquiry as the trial court. *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). Summary judgment is appropriate if, when taking the facts most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992). Where reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. *LaPlante v. State*, 85 Wn.2d 154, 160, 531 P.2d 299 (1975).

## Implied Easement Stemming from Unity of Title in the USA

The appellants claim that an implied easement was reserved in favor of the USA when it conveyed the surrounding land, leaving itself legally landlocked. The question of whether an implied easement can be traced back to the original patents of the USA is one of first impression in Washington.

An implied easement may arise by implied grant or implied reservation. Omar S. Parker, Jr., *Easements and Licenses, in* 1 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 10.3(3)(e) (3d ed. 1997). In its simplest form, an implied grant is created when a grantor conveys a tract of land that is completely surrounded by lands that the grantor retains. *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d 664, 667, 404 P.2d 770 (1965). Since the granted lands are cut off from access to a public way by the grantor's lands, an easement across those lands is implied.

To succeed in their implied easement claim, the appellants must prove three elements: (1) unity of title in the common grantor, (2) a severance of the estate, and (3) necessity. *Hellberg*, 66 Wn.2d at 668. Unity of title and severance are absolute requirements. *Id.* Necessity must exist at the date the common parcel is severed. *Id.* at 667.

The appellants contend that an implied easement was created when the USA issued its patents in Section 26 because the USA was also the original owner of the servient land. The State argues that common original ownership by the USA should not be considered unity of title when analyzing whether an implied easement exists, in that an implied reservation in favor of the USA at the date of its original ownership, without evidence of Congressional intent to imply such a reserved easement, would make the mandatory element that a party establish common ownership at the date of severance meaningless—because all ownership of land in the western states can be so traced.

The State's argument is persuasive. It is also consistent with the opinion of the United States Supreme Court in *Leo*

*Sheep Co. v. United States*, 440 U.S. 668, 99 S. Ct. 1403, 59 L. Ed. 2d 677 (1979). In *Leo Sheep Co.* the petitioners were livestock companies holding certain odd numbered sections of land in Wyoming as successors in fee under the Union Pacific Act of 1862. The government retained the even numbered sections, creating a checkerboard pattern. The issue presented was whether the USA held an implied easement to build a road across the private land to provide access to a public reservoir. The Supreme Court held that there was no implied reservation of an easement in favor of the USA.

The Court ruled that a reserved easement would not be implied, in part because the government had the power of condemnation, thus eliminating the necessity element. The Court also ruled that the common law doctrine of easement by necessity was both strained in its application to the USA and insufficient to overcome the inference prompted by Congress's omission of any reference to the reserved right asserted. The Court held that the pertinent inquiry was the intent of Congress when it granted the land to the Union Pacific. *Id.* at 681. After conducting an extensive review of the Act, the Court concluded that,

> [B]oth as a matter of common-law doctrine and as a matter of construing congressional intent, we are unwilling to imply rights-of-way, with the substantial impact that such implication would have on property rights granted over 100 years ago, in the absence of a stronger case for their implication than the Government makes here.

*Id.* at 681-82.

The Court made it clear that the pertinent inquiry, when considering an implied easement claim stemming from common ownership by the government, is whether there is evidence of intent by the government to retain a right-of-way. The Court further stated that to find implied reservations in favor of the USA would defeat the certainty and predictability of land titles.

Following *Leo Sheep Co.*, the State contends that the unity of title analysis should not extend further back than

to the first grantee of land from the government. Accordingly, under the State's argument, the title evidence in this case would indicate that there could be no implied easement by grant because there was no unity of title in the USA at the time it issued its patents in Section 26. The USA did not own the surrounding land over which the easement is claimed at the time it granted its patents in Section 26 in 1919 and 1921. The parcels of land that surround Section 26 were conveyed by the USA prior to 1919 under the Homestead Act and by patents issued to the Northern Pacific Railway Company.

Conversely, the appellants claim that they were the beneficiaries of a reserved easement in favor of the USA arising out of the patents issued to the railroad in Section 35 in 1905. In support of their claim, they cite *Herrin v. Sieben*, 46 Mont. 226, 127 P. 323 (1912) (holding that implied easements are inconsistent with statute of frauds and the eminent domain statutes) (overruled in part by *Simonson v. McDonald*, 131 Mont. 494, 311 P.2d 982 (1957)). The *Herrin* Court recognized a reserved easement in favor of the USA on the theory that the government and their successors and assigns should benefit from the same common law doctrine of implied easement as private parties.

However, *Herrin* is not controlling authority in Washington. Furthermore, the authority of *Herrin* is tenuous, given that it has been overruled in part by *Simonson v. McDonald*, which itself has been overruled in part by *Thisted v. Country Club Tower Corp.*, 146 Mont. 87, 405 P.2d 432 (1965). And most importantly, *Herrin* is in conflict with the subsequent decision of the United States Supreme Court in *Leo Sheep Co.* Accordingly, we decline to follow *Herrin*.

The appellants also argue that an easement can be implied under the holding of *Montana Wilderness Ass'n v. United States Forest Serv.*, 496 F. Supp. 880 (1980), *aff'd on other grounds and remanded*, 655 F.2d 951 (9th Cir. 1981). In *Montana Wilderness*, the easement was in favor of a

railroad company by implied grant to the railroad; it did not involve an implied reservation in favor of the USA. The Court looked to the intent of Congress and the purpose of the original railroad grant. *Id.* at 885. The Court found that Congress intended an implied easement to the railroad lands to make the land more worthwhile to the railroad. *Id.* at 887. Absent a right of access, the entire congressional scheme—to induce the railroad companies to build railroads in order that the western United States be settled and developed—would have been frustrated. *Id.* at 886.

The facts of the instant case are distinguishable from those in *Montana Wilderness*. Here, the appellants offer no legislative history to demonstrate that Congress intended to imply that an easement was reserved to the USA under the railroad grants. Neither did the appellants show that the USA lacked authority to condemn access if it deemed doing so to be necessary. Since the USA had no right to a reserved easement when it severed its interest in Section 35 from Section 26 in 1905, its successors obtained no such right.

We therefore reject the appellants' arguments regarding the existence of an implied easement that was created in the USA when it issued its patents in Section 26. We follow instead the reasoning in *Leo Sheep Co.*, and decline to imply a reservation in favor of the USA, without evidence of congressional intent to imply a reserved easement. As the State argues, to do otherwise would impair the predictability of land titles and make the mandatory element of implied easements—that a party establish common ownership at the date of severance—meaningless in the western United States because the entire west was owned by the federal government at one time.

Prescriptive Easement

The appellants argue that a prescriptive easement was established on the South Side Road through an oral grant of easement between Weyerhaeuser and Zemp, after which subsequent owners of the Granite Beach property used the South Side Road without permission. *See* Appellant's Reply

Br. at 8. The appellants also argue that a prescriptive easement was established on Granite Creek Road through adverse possession by previous owners.

 Prescriptive rights are not favored in the law, and the burden of proof is upon the one who claims such a right. *Todd v. Sterling*, 45 Wn.2d 40, 42, 273 P.2d 245 (1954). The claimant must prove that his use of the land has been open, notorious, continuous, and uninterrupted for 10 years over a uniform route adverse to the owner. *Id.* at 42-43. The claimant has the burden to prove all of the required elements. *N.W. Cities Gas Co. v. W. Fuel Co.*, 13 Wn.2d 75, 84, 123 P.2d 771 (1942). Where the land is vacant, open, unenclosed, and unimproved, use is presumed permissive. *Todd*, 45 Wn.2d at 43. In such a case, evidence is required indicating that the user was indeed adverse and not permissive. *Id.* This rule springs from the modern tendency to restrict the right of prescriptive use to prevent mere neighborly acts from resulting in deprivation of property. *Roediger v. Cullen*, 26 Wn.2d 690, 711, 175 P.2d 669 (1946).

If express permission is given to use the right of way, use does not ripen into a prescriptive easement unless the user makes a distinct, positive, assertion of a right adverse to the property owner. *Ormiston v. Boast*, 68 Wn.2d 548, 551, 413 P.2d 969 (1966). Possession is adverse if a claimant uses property as if it were his own, entirely disregards the claims of others, asks permission from nobody, and uses the property under a claim of right. *Lee v. Lozier*, 88 Wn. App. 176, 182, 945 P.2d 214 (1997) (citing *Crescent Harbor Water Co. v. Lyseng*, 51 Wn. App. 337, 341, 753 P.2d 555 (1988)). If the use of an easement acquired by oral grant continues for the prescriptive period of 10 years in a manner that is open, notorious, continuous and adverse to the owner of the land, the oral grant then ripens into a prescriptive easement to permanently use the road. *Washburn v. Esser*, 9 Wn. App. 169, 172, 511 P.2d 1387 (1973).

The State contends that the appellants cannot overcome their initial burden of showing continuous use on either the South Side Road or the Granite Creek Road for a 10-year

period. We agree. Because we hold that the appellants did not present evidence that their use of the property was sufficiently continuous and for the required time period, we need not address the other elements of the prescriptive easement claim.

Regarding the South Side Road, the record shows that Zemp sold the property to Tye River in 1966. Mr. Cromarty, one of the principals of Tye River, testified that he used the South Side road to look at timber on the property only two or three times during the 20-year period that Tye River owned the property. The Campbells purchased Tye River's property in 1987. Jim Campbell testified that the Campbells used the South Side road only three times during their nine years of ownership. On these facts, the appellants cannot show continuous use for a 10-year period.

The appellants rely on *Lee*, 88 Wn. App. 176, and *Howard v. Kunto*, 3 Wn. App. 393, 477 P.2d 210 (1970), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984). However those cases are distinguishable from the instant case because the claimants in *Lee* and *Howard* made seasonal use of recreational property every year. The appellants' reliance on *Double L. Props., Inc. v. Crandall*, 51 Wn. App. 149, 751 P.2d 1208 (1988), is unwarranted because that case does not address the frequency or continuity of the claimants' property use. The appellants fail to cite any cases where analogously sporadic and infrequent use satisfied the "continuous and uninterrupted use" requirements necessary to establish a prescriptive easement. Nothing in the case law indicates that three visits during a 20-year period, or three visits in a 9-year period, could be deemed continuous enough to put the servient landowner on notice of an adverse claim. The use need not be constant, but it must be continuous for a 10-year period such that the landowner would be on notice that a potential claim exists. *Lee*, 88 Wn. App. at 185.

█ Similarly, the appellants fail to show that previous owners of Section 26 used the Granite Creek Road in a way that was sufficiently continuous for the purpose of an

easement by prescription. First, the use of Granite Creek Road by the Campbells is irrelevant because, in 1983, the State acquired Section 23—the property adjacent to the appellants' property in Section 26, through which Granite Creek Road travels to Section 26—before the Campbells purchased their property. The Campbells could not create an easement by prescription over State land. *See Simonson v. Veit*, 37 Wn. App. 761, 683 P.2d 611 (1984). Second, the record shows that between 1966 and 1987, Mr. Cromarty of Tye River used the Granite Creek Road only "occasionally" to view the property, and some years Cromarty did not use the road at all. Accordingly, the trial court properly dismissed the appellants' prescriptive easement claim.

Action to Condemn an Interest in Private Easements

Appellants seek to condemn joint use of existing private easements that cross State land on Granite Creek Road, which are held by The Land Conservancy and Manke. The Land Conservancy is the successor in interest to R&S Lumber, which obtained an easement from the DNR to access portions of Sections 15, 16, and 23. Manke obtained an easement across Sections 11, 14, 15, and 16. None of the defendants' easements extend to the appellants' property in Section 26. The easements held by The Land Conservancy and Manke are restricted to the owners' ingress and egress across State land.

The appellants cite RCW 8.24.030 as authority to obtain a private way of necessity across State property by condemning the easement rights of The Land Conservancy and Manke. Chapter 8.24 RCW provides a private right of condemnation over private lands in some circumstances. However, chapter 8.24 RCW is strictly construed and is limited to that which is expressly conferred or necessarily implied. *Jobe v. Weyerhaeuser Co.*, 37 Wn. App. 718, 724, 684 P.2d 719 (1984). Chapter 8.24 RCW cannot be used to condemn State land. *Id.*

In *Brown v. McAnally*, 97 Wn.2d 360, 644 P.2d 1153 (1982), the Court addressed the issue posed by appellants in this case, and concluded that "the joint use of the private way of necessity must not differ from and must not be

incompatible with the use to which it is already being put by the condemnees. In short, it must neither impair nor destroy full use of the existing road by the condemnees." *Brown*, 97 Wn.2d at 368 (citing *State ex rel. Colyn v. Superior Court*, 132 Wash. 411, 412-13, 232 P. 282 (1925)). The Brown Court further stated that,

> [T]he statute which gives a landlocked owner a way of necessity over lands of a stranger is not favored in law and thus must be construed strictly. It must be borne in mind that RCW 8.24 authorizes a limited private condemnation proceeding in which the private property rights of one are taken for the benefit of another. The taking is limited to necessary ingress and egress only. It is not extended to those necessities that may be created by the contemplation of a future real estate subdivision development.

*Brown*, 97 Wn.2d at 370.

The appellants rely on *State ex rel. Polson Logging Co. v. Superior Court*, 11 Wn.2d 545, 119 P.2d 694 (1941), as authority to condemn the Manke and The Land Conservancy easements that cross State land. In *Polson Logging Co.*, the Court allowed a petitioner to condemn a private way of necessity in an existing easement over State land. There, the petitioner had a license to use, and had helped to maintain, a road that traveled over Polson's private property. The road also crossed a small corner of State land for which Polson held a 10-year easement. Polson denied the petitioner the right to continue using the road. The petitioner filed for private condemnation over Polson's property, and Polson objected, arguing that a small part of the road crossed State land, which was not subject to private condemnation. The Court ruled that because the State had already granted Polson an easement over the State land, Polson's easement was separate from the State's fee interest and was, therefore, subject to condemnation.

*Polson* is distinguishable from the instant case. First, unlike in *Polson*, the easement to be condemned in this case would not provide full access to the appellants' land. Therefore, in order for the appellants to gain their desired

easement, an easement across State land must be independently conferred. Furthermore, *Polson* involved a dispute between private parties, and the Court ruled that there would be no effect on the State's interest; therefore the State did not need to be joined as a party. Here, although the State is a party, its interests are clearly implicated, as the relief sought would expand the number of parties that may use the road and the purposes for which the road is used.

The appellants are seeking to be added to private easements rather than substituted for them, thereby effecting an increased burden on the servient owner's interests, which cannot be done without condemning that owner's interest in whole or in part. *See State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 72 P. 89 (1903) (railroad condemned the "entire interest" of the vendee of a contract to purchase State land, thereby substituting for the party who had purchased the State land on contract). Allowing the appellants to condemn the Manke and The Land Conservancy easements to serve Section 26 would be an expansion of the servitude placed upon the State lands by the original easement. *See Brown v. Voss*, 105 Wn.2d 366, 715 P.2d 514 (1986) (holding that an easement cannot be expanded to serve a parcel that was not part of the original easement).

Neither Manke nor The Land Conservancy has a right to use the Granite Creek road to access Section 26. Appellants cannot condemn an interest that Manke and The Land Conservancy do not have. The appellants effectively seek to extend the Manke and The Land Conservancy easements to include additional travel to Section 26, which is not appurtenant to those easements. Granting that relief would effectively condemn a new interest in State land, which is not authorized by chapter 8.24 RCW.

Therefore, the appellants' private condemnation actions cannot achieve the access that they seek. If the appellants had proved that they had an implied or prescriptive easement over Granite Creek Road, it would cover the entire

road. There would be no necessity for a private right of condemnation under chapter 8.24 RCW. *See Hellberg v. Coffin Sheep Co.*, 66 Wn.2d at 667 (condemnation by chapter 8.24 RCW is not necessary where the landlocked party has an easement by implication over the land to be condemned). Conversely, if there is no implied or prescriptive easement to get to Section 26, then an action under chapter 8.24 RCW is also unnecessary because it will not result in access to Section 26. *See Jobe*, 37 Wn. App. at 725 (chapter 8.24 RCW cannot be used to condemn access across State land).

In summary, we affirm the dismissal of the private condemnation claims because (1) the appellants cannot obtain joint uses of private ways of necessity that would expand the uses of the condemnees, and (2) the appellants cannot, in any event, obtain full access to their property by use of the easements held by The Land Conservancy and Manke.

Inverse Condemnation

Finally, the appellants claim inverse condemnation on the basis that the State's denial of access beyond an easement for resource management restricts the appellants' use of their properties and thereby constitutes a taking under the Washington State Constitution, article I, section 16.

The term "inverse condemnation" is used to describe an action alleging a governmental taking, brought to recover the value of property that has been appropriated in fact, but with no formal exercise of power. *Bodin v. City of Stanwood*, 79 Wn. App. 313, 320, 901 P.2d 1065 (1995), *aff'd*, 130 Wn.2d 726, 927 P.2d 240 (1996). An action for inverse condemnation must be based upon an injury to a right in private property and not merely a privilege. *Billington Builders Supply, Inc. v. City of Yakima*, 14 Wn. App. 674, 677, 544 P.2d 138 (1975). There can be no inverse condemnation if no property right exists. *Orion Corp. v. State*, 109 Wn.2d 621, 641-42, 747 P.2d 1062 (1987).

The issue posed—whether an unconstitutional taking occurs when the State limits the use of a road on State trust

lands to its historical uses of forest resource management, thereby restricting the ability of owners of neighboring property to acquire an easement to use the road for other purposes—is one of first impression in Washington.

The appellants contend that the State is infringing upon their general right to develop their land to its fullest economic potential, which they claim would be in the form of a residential subdivision. They frame the issue as though they had an existing property right in an easement that is necessary for such development. That is not the case. The right to cross adjoining land is not a property right that is incident to the ownership of the land to be developed, unless the right is obtained from the adjoining landowner by agreement or other legal means.

The State's land at issue in this case is administered for the benefit of different trusts established at statehood or under chapter 76.12 RCW (Forest Board Lands). The federal land grant trusts were created specifically to benefit certain named beneficiaries such as common schools. *Skamania County v. State*, 102 Wn.2d 127, 132, 685 P.2d 576 (1984). The Forest Board Land trusts are similarly managed for the named beneficiaries under RCW 76.12.030. *Id.* at 133. The State manages these lands according to the fiduciary duties governing trustees, who must act with undivided loyalty to the trust beneficiaries. *Id.* at 134.

Although the DNR has the authority to grant easements over trust land, it is not required to do so:

> The department of natural resources *may* grant to any person such easements and rights in state lands or state forest lands as the applicant applying therefor may acquire in privately owned lands through proceedings in eminent domain. No grant shall be made under this section until such time as the full market value of the estate or interest granted together with damages to all remaining property of the state of Washington has been ascertained and safely secured to the state.

RCW 79.01.414 (emphasis added).

The term "may" is presumed to be used in a permissive or

discretionary sense. *Amren v. City of Kalama*, 131 Wn.2d 25, 35 n.8, 929 P.2d 389 (1997). Therefore, the appellant's desired easement rights may be procured only after the State determines that the desired servitude on State trust land is consistent with the State's trust obligation. And then the State must collect the full market value of the easement before the easement may be issued and the property right established.

The requirements of RCW 79.01.414 clearly establish the DNR's discretionary authority to manage trust lands for the benefit of the State. The DNR determined that an easement that would facilitate a residential in-holding within the State's forest land would conflict with the DNR's timber management plans for the trust lands.

The appellants have not established a right to cross the adjoining State lands to develop their property for residential use, let alone a right that supersedes the statutory authority of the DNR to manage State trust lands. Furthermore, the record shows that the appellants were aware that access to their property was problematic when they purchased it. The appellants knew their land was surrounded by State forest land. They are properly left with the property rights that existed at the time the property was acquired. Accordingly the State has taken nothing from them in refusing their request for an unlimited easement. The appellants' inverse condemnation claim was properly dismissed because the property right the appellants claim was injured does not exist. *See Orion Corp.*, 109 Wn.2d at 641-42.

Finding no error in the trial court's grant of summary judgment to the respondents, we affirm.

BAKER and ELLINGTON, JJ., concur.