[No. 48031-1. En Banc. May 13, 1982.]

DONALD M. BROWN, ET AL, *Respondents,* v. DAN MCANALLY, ET AL, *Appellants,* YAKIMA COUNTY, ET AL, *Respondents.*

*Velikanje, Moore & Shore, Inc., P.S.,* by *John S. Moore,* for appellants.

*Ronald F. Whitaker* (of *Walters, Whitaker, Finney & Falk*), for respondents Brown.

*Louis Daniel Fessler,* for respondent Yakima County.

STAFFORD, J.—The trial court granted respondents, Donald and Colista Brown, a 50–foot private way of necessity over appellants' land and ruled that such easement and accompanying rights could thereafter be conveyed to the County for use as a public county road. We reverse the trial court and remand the cause for new trial.

Respondents own 28.9 acres of land in Yakima County which they desire to have platted into 44 residential lots. At present, however, the property is landlocked. The nearest public way is a county road known as Lookout Point Road which runs generally north and south. A narrow dirt and gravel way, known as Brown Road, intersects Lookout Point Road at a point approximately one–half mile easterly of respondents' land. Brown Road runs westerly from Lookout Point Road for approximately one–half mile to its terminus slightly north and east of respondents' property. Respondents have access to Brown Road by means of a 60–foot nonexclusive easement across land which abuts both respondents' land and Brown Road.

Brown Road, which varies from 15 to 20 feet in width, serves approximately 14 to 15 families who either live along the road or to the west of it. The east one–fourth mile of the road traverses property owned by Mr. and Mrs. Marvin Sunquist who are not parties to this action. The west one–fourth mile traverses property owned by appellants McAnally, Worby, Storch and Oberlander. All have easements of record over Brown Road for ingress to and egress from their respective properties to Lookout Point Road. Up

to the present time respondents have made little use of Brown Road because they have resided in California. Aside from a possible permissive user of Brown Road, however, respondents' acreage has no recorded access to Lookout Point Road. Thus, respondents assert, their property is legally landlocked.[1]

In furtherance of their plan to subdivide the 28.9 acres into residential lots, respondents submitted a proposed plat to the County. Respondents were informed that before the County would approve the plat they must comply with several conditions. Insofar as this case is concerned, the most

---

[1] The vicinity map has been adapted from respondents' exhibit 2.

important condition is the requirement that the proposed plat be serviced by a 50–foot county or public road connected to Lookout Point Road.

Initially respondents asked the County to condemn the 50–foot right of way which would overlay Brown Road. The County refused because it would not be beneficial to the County to allocate road funds to such a minor road. Thereafter, respondents sought, unsuccessfully, to obtain the approval of a variance which would reduce the 50–foot roadway to 30 feet.

Ultimately, at the suggestion of their attorney, respondents proposed to the County that the plat be approved conditioned upon respondents acquiring a 50–foot private way of necessity that would overlay Brown Road and conditioned upon building the road to County specifications. Respondents also were to acquire certain rights such as the right to locate public and private utilities within the right of way and the right to regulate approaches. Finally, it was proposed that respondents would transfer the completed project to the County as a county road.

The proposal met with the approval of the County Commissioners and the plat was conditionally approved on August 17, 1979, subject to 17 conditions. Only the two following conditions are material here:

Resolution No. 392–1979

. . .

4) Acquisition of a fifty foot wide road easement connecting the plat to Lookout Point Road accessible to and useable by the general public at large and capable of being transferred to the County for full maintenance and use as a County road, including the right to locate public and private utilities within the right–of–way as a County road. Said right–of–way shall be acquired, improved to a 22 foot minimum width light bituminous surface to County road standards (except that no curbs and gutters shall be required) and transferred to the County prior to final plat approval.

. . .

17) County will participate in the construction of

Brown's Road in the amount of $30,000 and the developer will do the actual construction to meet county standards for a light bituminous treatment.

Prior to institution of the condemnation proceedings and the petition for declaratory judgment, respondents entered into an agreement with Mr. and Mrs. Sunquist. In return for a specified sum the Sunquists agreed to place in escrow a deed to the County which would convey for roadway purposes a 50–foot easement over the one–fourth mile of their property traversed by Brown Road. The deed is to remain in escrow until respondents have completed acquisition of the western one–fourth mile of right of way, *i.e.,* the 50–foot roadway sought in this lawsuit which will overlay the western one–fourth mile of Brown Road. Further, the deed is not to be released to the County until there is proof the County will accept the entire 50–foot roadway as a county road. In short, the Sunquist agreement with respondents is wholly dependent on the success of the instant condemnation and declaratory judgment actions.

Based upon paragraph 4 of the preliminary plat, respondents sought to condemn a "private way of necessity" for a 50–foot easement running westerly one–fourth mile along Brown Road from the Sunquists' western property line. Respondents also brought an action for a declaratory judgment that would authorize transfer of the condemned *private easement* to the County for *public road purposes.* These actions were opposed by appellants. Aside from appellants, who have a fee interest to an easement in the property comprising the proposed county road, other necessary parties were joined, including corporations having utilities along the western one–fourth mile of Brown Road. The trial court granted both the petition for a "private way of necessity" and the declaratory judgment. We reverse the trial court in both actions.

Appellants have assigned error to numerous findings of fact and conclusions of law entered in support of the order adjudicating a private way of necessity. Similarly, they have assigned error to numerous findings of fact and conclusions

of law entered in support of the declaratory judgment. As will be explained more fully in the opinion the assignments of error are well taken. We shall not attempt to address each specifically. At this juncture it is sufficient to say that the findings and conclusions were proposed and adopted on the mistaken assumption that Const. art. 1, § 16 (amend. 9) and RCW 8.24.010 authorize, for commercial development purposes, condemnation of a roadway with the physical dimensions and legal scope sought here. Further, there appears to have been a misapprehension that in a private condemnation proceeding a private condemnor, acting under the guise of a "private way of necessity", may obtain those powers normally attributable to a public condemnor in a public condemnation proceeding such as the power to control the location of public and private utilities, regulate approaches along the "private way of necessity" and to regulate generally any uses inconsistent with use of the right of way as a county road.

The same misapprehension pervades the declaratory judgment action. Further, there was an incorrect assumption that private lands may be condemned for a "private way of necessity" even though the condemnor clearly contemplates that the condemned private land ultimately will be transferred to the County for public road purposes. Here too, with but few exceptions, the challenged findings of fact are not relevant and the conclusions of law based thereon are incorrect.

I

THE PRIVATE WAY OF NECESSITY

Although the Washington Constitution generally prohibits the taking of private property for private use, such property may be taken for the creation of a "private way of necessity". Const. art. 1, § 16 (amend. 9). Since the constitutional provision is not self–executing, RCW 8.24 fleshes out the constitution and more fully declares the conditions under which private property may be condemned for a "private way of necessity". RCW 8.24.010 provides in perti-

nent part:

> An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity . . . may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity . . . The term "private way of necessity," as used in this chapter, shall mean and include a right of way on, across, over or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads . . .

■ Const. art. 1, § 16 (amend. 9) and RCW 8.24.010 declare a public policy against rendering landlocked property useless. An owner or one entitled to the beneficial use of landlocked property may condemn a private way of necessity for ingress and egress in the ordinary sense of a "way", *i.e.,* a mere right of passage over land. *State ex rel. Polson Logging Co. v. Superior Court,* 11 Wn.2d 545, 562–63, 119 P.2d 694 (1941); *State ex rel. Huntoon v. Superior Court,* 145 Wash. 307, 312, 260 P. 527 (1927). It is not imperative that the necessity be absolute. It must, however, be reasonably necessary under the facts of the case, *State ex rel. Polson Logging Co. v. Superior Court, supra* at 562–63, as distinguished from merely convenient or advantageous, *Dreger v. Sullivan,* 46 Wn.2d 36, 38, 278 P.2d 647 (1955).

■ We have long recognized that if one is otherwise entitled to a private way of necessity it may be condemned where an existing private way is already established. *State ex rel. Polson Logging Co. v. Superior Court, supra; State ex rel. Colyn v. Superior Court,* 132 Wash. 411, 232 P. 282 (1925). *See also State ex rel. St. Paul & Tacoma Lumber Co. v. Dawson,* 25 Wn.2d 499, 504, 171 P.2d 189 (1946). The single fact that a potential condemnor may previously have leased or otherwise contracted with the condemnees for an easement does not in and of itself prevent the potential condemnor from condemning a private way of necessity as a joint use. *State ex rel. Polson Logging Co. v. Superior*

*Court, supra* at 568 (potential condemnor sought to condemn a private way of necessity over an easement already leased to the condemnor). Similarly under this approach, a potential condemnor should not be prevented from condemning a private way of necessity merely because the condemnor may enjoy the permissive user of a "way".

■ This court has held that in such cases the joint use of the private way of necessity must not differ from and must not be incompatible with the use to which it is already being put by the condemnees. In short, it must neither impair nor destroy full use of the existing road by the condemnees. *State ex rel. Colyn v. Superior Court, supra* at 412–13; *accord, State ex rel. Polson Logging Co. v. Superior Court, supra* at 559–60 (condemned joint use limited to 3 years); *see also State ex rel. St. Paul & Tacoma Lumber Co. v. Dawson, supra* at 504.

Viewing the action before us in light of the foregoing cases, it is apparent respondents possessed neither an express nor an implied easement to use Brown Road although a permissive user may have existed. Lookout Point Road was thus legally inaccessible from respondents' property. Consequently, respondents were entitled to a private way of necessity for joint use along Brown Road, as it existed, for ingress and egress in the ordinary sense of a "way". *State ex rel. Polson Logging Co. v. Superior Court, supra* at 562–63; *see State ex rel. St. Paul & Tacoma Lumber Co. v. Dawson, supra* at 504; *State ex rel. Huntoon v. Superior Court, supra* at 312. They were entitled to use the road jointly with the condemnees as long as that user would not be incompatible with the use to which it was then being put by the condemnees and would neither impair nor destroy the condemnees' full use of the existing road. *State ex rel. Colyn v. Superior Court, supra* at 412–13; *accord, State ex rel. Polson Logging Co. v. Superior Court, supra* at 559–60. This, however, is not what respondents sought and is not what the trial court granted them.

Respondents did not obtain an easement authorizing the joint user of existing Brown Road for the purpose of ingress

and egress in the ordinary sense of a private way of necessity. Rather, they sought and obtained a 50–foot easement that overlaid Brown Road and which included the right:

> to locate public and private utilities within the right of way so acquired, the right to regulate approaches along the full length of the right of way and the right to regulate uses inconsistent with the use of the right of way for the purposes for which it is acquired; including regulation of uses inconsistent with use of the right of way if it were to become a county road.

Appellants' nonexclusive easement and right of usage in Brown Road was, thus, declared subordinate to the rights acquired by respondents. Appellants were denied any right to use their previously existing easements and rights of usage in a manner inconsistent with respondents' newly acquired easement. In short, respondents obtained essentially all rights which would have been obtained by the County had it been the condemnor under an order of public use and necessity.

Respondents' easement greatly exceeds the rights contemplated by Const. art. 1, § 16 (amend. 9), RCW 8.24.010 and the applicable law of this state. The easement granted them would authorize much more than the joint user of an existing way and would give them much more than a private way of necessity for ingress and egress, in the ordinary sense. In fact, the way granted respondents would not only impair and be wholly incompatible with appellants' use of Brown Road, it would totally destroy many of appellants' rights of occupancy and user.

■ Respondents contend that the 50–foot right of way, with the attendant rights granted them, is necessary for the development of their contemplated real estate development. We agree paragraph 4 of the preliminary plat imposed conditions requiring respondents to obtain broad rights to regulate the use of the right of way as a county road. These factors do not transform the granted right into a private way of necessity, however. To hold that it does would expand the law of this state far beyond its existing

bounds.

Our research has revealed no case in this jurisdiction which has extended the concept of "private ways of necessity" for ingress and egress, to rights of way for the future development of real estate subdivisions. Further, respondents have not favored us with any citation to support that theory. Nevertheless, they urge us to adopt the rationale of *Solana Land Co. v. Murphey,* 69 Ariz. 117, 210 P.2d 593 (1949) and grant them a "way" with the physical dimensions and legal scope sought here. We have reviewed *Solana* with interest. We find, however, the overly expansive consideration given to real estate subdivision development fails to comport, either historically or logically, with the law of this state. Further, the operative facts of *Solana* and the case at bench differ markedly.

We have held, and continue to hold, that the statute which gives a landlocked owner a way of necessity over lands of a stranger is not favored in law and thus must be construed strictly. It must be borne in mind that RCW 8.24 authorizes a *limited* private condemnation proceeding in which the private property rights of one are taken for the benefit of another. The taking is limited to necessary ingress and egress only. It is not extended to those necessities that may be created by the contemplation of a future real estate subdivision development. There is, after all, a constitutional right to the protection of one's property that must not be lightly regarded or swept away merely to serve the convenience or advantage of a stranger to the property. *Dreger v. Sullivan, supra* at 38; *State ex rel. Carlson v. Superior Court,* 107 Wash. 228, 181 P. 689 (1919).

Since respondents were granted a "way" far exceeding the private way of necessity for ingress and egress contemplated by Const. art. 1, § 16 (amend. 9) and RCW 8.24, the trial court is reversed. The cause is remanded for a determination consistent with this opinion.

In light of this opinion another issue raised by appellants may have come into play. Respondents sought a private way of necessity only over the *western* one-half of Brown

Road. They did not, however, seek a private way of necessity over the *eastern* one–half of the road. For the latter right of way respondents relied on Sunquists' easement to the County. That easement was not to become effective, however, until respondents obtained a 50–foot right of way from appellants, together with sufficient attendant rights to make it a county road. Since respondents have failed to obtain the requisite western right of way, a unique question arises concerning the impact of the Sunquist easement over the eastern one–half of Brown Road, *i.e.*, have respondents properly sought a true private way of necessity to the nearest county road? As it stands, the Sunquist easement is not yet effective. Further, the Sunquists, owners of property comprising the eastern half of Brown Road, are not parties to this action. Consequently, it appears respondents may not have properly sought a private way of necessity to reach Lookout Point Road. We are in no position to resolve the issue at this juncture. Nevertheless, on remand it should be considered.

## II
### The Declaratory Judgment

As indicated above, respondents sought unsuccessfully to have the County exercise its right of eminent domain to condemn Brown Road as a public county road. The County did agree, however, to accept it as a county road and to invest $30,000 for road construction if respondent could obtain a 50–foot easement capable of being transferred to the County for use as a county road. Respondents were to obtain the right to regulate public and private utilities within the right of way, the right to regulate approaches along the right of way and the right to regulate uses of the right of way inconsistent with its use as a county road. To that end, respondents sought to condemn a private way of necessity which thereafter was to be transferred to the County as a public county road.

The trial court ruled that a private way of necessity could be obtained under such conditions and thereafter

transferred to the County for use as a public county road. We disagree and reverse the trial court.

In reviewing the correctness of the trial court's decision, we must disregard form and discern what actually was sought to be accomplished. Respondents were attempting to *privately* condemn property rights, under RCW 8.24, which they would ultimately put to a *public use.* By so doing they not only sought to circumvent the limited power of condemnation authorized by RCW 8.24, but to acquire rights greater than would otherwise be available to them, *i.e.,* rights legally afforded only to counties under RCW 8.08. Further, this tactic would also aid the County to evade the strict statutory proof required of counties seeking to exercise the right of eminent domain under RCW 8.08.

Before an owner of landlocked property may condemn a private way of necessity across the land of a neighbor it must be established, among other things, that the contemplated use for which the property is sought is indeed a *private use* for a *private* way of necessity. RCW 8.24.010; *see also* RCW 8.20.070. On the other hand a county attempting to condemn land for a way must prove that the contemplated use for which the land is sought is a *public use* of the county. RCW 8.08.040.

Clearly, the proof required under RCW 8.24.010 and under RCW 8.08.040 is incompatible; the former requires proof of a contemplated *private use* and the latter requires proof of a contemplated *public use.* Proof to support an action under one statute necessarily precludes a successful action under the other. While both the landlocked owner and the county have the power to condemn property, the owner of landlocked property is only authorized to condemn land for his or her own needs and use, and is not authorized to condemn land for another or for some other use. *State ex rel. Merriam v. Superior Court,* 55 Wash. 64, 66–67, 104 P. 148 (1909); *see Spokane v. Spokane & Inland Empire R.R.,* 75 Wash. 651, 658, 135 P. 636 (1913). This rule of logic may not be circumvented by conveying the land, acquired by private condemnation for one's own use

for private purposes, to a county or another person for a different use. *State ex rel. Merriam v. Superior Court, supra* at 66–67. *See Spokane v. Spokane & Inland Empire R.R., supra* at 658; *see also King County v. Theilman,* 59 Wn.2d 586, 595–96, 369 P.2d 503 (1962); *cf. Neitzel v. Spokane Int'l Ry.,* 65 Wash. 100, 117 P. 864 (1911).

After considering the entire record and determining what actually was sought to be accomplished by respondents we conclude the trial court erred by granting their petition for declaratory judgment.

The cause is remanded to the trial court for reconsideration of the "private way of necessity" in a manner consistent with this opinion.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.