IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MIKE WALCH and MARCIA WALCH, Husband and wife, | ) ) ) | No. 30129-0-III |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| KERRY A. CLARK and PATRICIA L. CLARK, husband and wife; W.L. CLARK FAMILY, LLC, a Washington Limited Liability Company; ROBERT C. FOLKMAN and PATRICIA W. FOLKMAN, husband and wife, | ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) | |

KORSMO, C. J. — This is an action to attempt to obtain an easement by necessity across commercial property for the benefit of other commercial property owners. The trial court dismissed the common law theories of relief at summary judgment and then rejected the statutory theory after bench trial. We affirm the trial court's rulings concerning the easement and partially affirm the attorney fees award. We remand for the court to segregate its fee award and consider respondents' CR 11 argument. Whether respondents are entitled to attorney fees on appeal will be determined by the outcome of the remand.

respondents are entitled to attorney fees on appeal will be determined by the outcome of the remand.

## FACTS

Mike and Marcia Walch own Rainier Skyline Excavators, Inc. (RSE), a company that designs and builds portable hydraulic track drive skyline excavators. In 2000, the Walches became interested in buying some property in Cle Elum, Washington. They wanted to use the property, which included a pond known as the Dalle Pond, to demonstrate, display, and sell RSE's machinery as well as to manufacture excavators. Many components used to assemble the excavators must be transported on extra-long lowboy trailers, called superloads. These superloads can be up to 165 feet in length and can carry several hundred thousand pounds.

The Walches purchased the property in May 2004. The real estate contract identifies the Walches' access to the property by way of an existing easement over the property located to the east of the Walches' property, then continuing east over and across the Burlington Northern Santa Fe (BNSF) railroad corridor, and then proceeding north over and across the BNSF railroad crossing to Owens Road, "so long as the railroad shall allow." Ex 1. At that point, Owens Road becomes a public right-of-way owned by the city of Cle Elum (City).

The City has a private agreement with the Owens family to use Owens Road south of the BNSF railroad crossing to access the City's sewage treatment plant. A trucking

2

company and several private residents all use the BNSF crossing on Owens Road for access to their respective properties, but they do not have permits from BNSF to cross the railroad right-of-way.

The respondents in this action, the Clarks and the Folkmans, own property located to the west of the Walches' property, in the Swiftwater Business Park. All the property owned by the parties in this action is presently zoned by the City as being within its Industrial District.[1]

On August 9, 2010, the Walches filed suit for a 30-foot easement across the respondents' properties. The Walches alleged that a road existed at this location, and that they used this road to access the property when they were deciding whether to purchase.[2] The Walches claimed an easement implied from prior use and/or prescription or, alternatively, an easement by necessity pursuant to RCW 8.24.010.

The trial court dismissed the common law claims for prescriptive easement or implied easement by prior use before trial. However, the statutory claim proceeded to bench trial, where the Walches claimed they were entitled to an easement by necessity because their property was effectively landlocked for several reasons: (1) they had no legal, insurable access over the railroad right-of-way, and (2) as a practical matter they

---

[1] *See* chapter 17.36 of the Cle Elum Municipal Code.
[2] The respondents disputed this claim, and the trial court found that there was no evidence that a road ever existed at this location.

could not physically enter or exit the property because the super-lowboy trailers could not use Owens Road.[3]

Mr. Walch testified that he had not taken any steps to submit any land use applications for the property because he did not want to do any studies or plans until they had legal access to the property. He also acknowledged that he had not hired any engineers to examine the route feasibility or made any attempts to obtain an estimate of the cost of improving Owens Road for the use of the super-lowboys. Additionally, he testified that the Walches could not get their access insured because they do not have a BNSF permitted easement for access to their property. The Walches had not sought a permit to cross the railroad at Owens Road.

City administrator Matt Morton testified that the Walches had never submitted any land use applications, their intended use of the property would be a conditional use, there was no guarantee that the Walches would be permitted to use the property for RSE, and it was premature to give an opinion on whether the City would grant a permit of any kind. He also testified that the Dalle Pond on the Walch property is classified as a category three wetland, which could further complicate the land use permit process.

---

[3] In particular, they alleged that the superloads could not negotiate the turns at Owens Road, which also was too narrow, and the trailers would get high centered on the railroad tracks.

The trial court dismissed the Walches' RCW 8.24.010 claim without prejudice, finding that the Walches had physical access to their property over the BNSF railroad crossing and that until such access was denied or withdrawn the Walches could make use and enjoyment of their property for those uses authorized by the City within the industrial zone. The court concluded that the property was not landlocked and there was no guarantee that RSE could be situated on the property.

Respondents requested attorney fees and costs under RCW 8.24.030 for defending all three easement claims. Finding that the claims all involved the same underlying set of facts and were so interrelated that segregation of fees was not required, the trial court awarded attorney fees for defending all three claims. The Walches then timely appealed to this court.

## ANALYSIS

The Walches challenge the court's statutory easement ruling and the attorney fee awards. All parties seek attorney fees on appeal. We will first discuss the easement ruling before turning to the fee arguments.

*Easement*

The trial court determined that the Walches had "not established a reasonable necessity for a private way of necessity because their property is not landlocked and because they have no guarantee that a future use of their property would include situating

5

the RSE, Inc. manufacturing business on the property." Clerk's Papers (CP) at 251. We agree with both of those assessments and affirm the denial of the easement.

This matter was tried on the authority of RCW 8.24.010 that provides:

> An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity . . . on, across, over or through the land of such other . . . may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity . . . . The term "private way of necessity," as used in this chapter, shall mean and include a right of way on, across, over or through the land of another for means of ingress and egress.

This statute is "not favored in law and thus must be construed strictly." *Brown v. McAnally*, 97 Wn.2d 360, 370, 644 P.2d 1153 (1982). To condemn a private way of necessity, the Walches needed to show that access over the respondents' property was reasonably necessary for the proper use and enjoyment of their property. *See id.*

The landowner's necessity does not have to be absolute, but it must be reasonably necessary under the facts of the case. *State ex rel. Polson Logging Co. v. Superior Court*, 11 Wn.2d 545, 562-63, 119 P.2d 694 (1941). It is insufficient to show that the proposed route is more convenient or advantageous than another route. *State ex. rel Carlson v. Superior Court for Kitsap County*, 107 Wash. 228, 232, 181 P. 689 (1919). The party seeking to condemn the private way bears the burden of proving the reasonable necessity, including the absence of alternatives. *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009).

6

However, "a potential condemnor should not be prevented from condemning a private way of necessity merely because the condemnor may enjoy the permissive user of a 'way.'" *Brown*, 97 Wn.2d at 368. The Walches primarily rely upon this quote from *Brown*, arguing that although they currently have access to the property, they have no legally protected access and are entitled to pursue their private condemnation action. We agree. The existence of an access route does not bar a private condemnation action under the statute.[4] *Id.* at 366-68. Existing access, however, is evidence that can be considered in adjudging the *necessity* of the proposed private condemnation action. That is how the trial court treated the matter.

The existing access is strong evidence that the property is not currently landlocked. There also was evidence that the Walches had not undertaken efforts to determine the feasibility of obtaining permission from BNSF railroad or of improving the existing access route to accommodate the superloads RSE would need to use. In light of these facts, the trial court did not err in determining that the property was not landlocked.

The trial court also determined that necessity had not been established because it was only speculative that RSE would be able to use the property for its intended

---

[4] The Walches seek to extend *Brown* and apply the statute to condemn a new route rather than obtain legal standing to their existing route. In light of our agreement with the trial court that the Walches did not prove the necessity for private condemnation, we do not address the propriety of their proposed route or of their argument for extending *Brown*.

7

purposes. The testimony showed that a conditional use permit would be necessary to address zoning related restrictions on the property and there also were environmental concerns to address. Given these hurdles, it was understandable that the superloads might never need to access the property.

In *Brown*, the would-be condemners received approval of their proposed development on various conditions that included the need to obtain an easement permitting access to the property. *Id.* at 364-65. The Walches approached the matter from the opposite perspective by attempting to obtain their access before seeking approval of their development plans. While there is no legal impediment to using this approach, the uncertainty of the property's future use is a proper fact for the trier of fact to consider in assessing the necessity of the proposed private condemnation.

The record supported the trial court's determination that the Walches had not established the necessity of their proposed private condemnation. The property was not currently landlocked and it was uncertain whether future access would be inadequate. We thus affirm that aspect of the judgment.

*Attorney Fees*

The Walches attack the trial court's ruling assessing fees against them for defense of the common law claims as well as the reasonableness of the fee award. All parties seek attorney fees on appeal and the respondents also suggest alternative bases for upholding the fee award. We conclude that the trial court erred in not segregating the fee

8

awards, the fees were otherwise reasonable, and we remand for consideration of the CR

11 claim that was raised, but not decided, at trial. The Walches are not awarded any fees

for the appeal; whether respondents obtain appellate attorney fees is dependent upon the

outcome of the remand. We approach the fee question in a slightly different manner than

it was presented by the parties.

*RCW 8.24.030.* Attorney fees in a private condemnation action are governed by

RCW 8.24.030, which provides in relevant part:

> In any action brought under the provisions of this chapter for the
> condemnation of land for a private way of necessity, reasonable attorneys'
> fees and expert witness costs may be allowed by the court to reimburse the
> condemnee.

This court reviews a trial court's award of attorney fees for an abuse of discretion.

*Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). Discretion is abused when it

is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v.*

*Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Attorney fees should be awarded only for services related to causes of action that

allow for fees. *Absher Constr. Co. v. Kent Sch. Dist. No. 415*, 79 Wn. App. 841, 847, 917

P.2d 1086 (1995). If fees are authorized for only some of the claims, the fee award must

properly reflect a segregation of time spent on issues for which fees are authorized from

time spent on other issues. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672, 880 P.2d

988 (1994). However, if the claims are so related that no reasonable segregation can be made, the court does not need to require segregation. *See id.* at 673.

In awarding attorney fees, Washington courts apply the lodestar method and the trial court must enter findings of fact and conclusions of law supporting its decision to award fees. *Mahler*, 135 Wn.2d. at 434-35. The findings are necessary for an appellate court to review the award. *Bentzen v. Demmons*, 68 Wn. App. 339, 350, 842 P.2d 1015 (1993). Where a trial court fails to create the appropriate record, remand for entry of proper findings and conclusions is the appropriate remedy. *Mahler*, 135 Wn.2d at 435.

The Walches asserted three easement claims: an easement by necessity under RCW 8.24.010, a prescriptive easement, and an implied easement by prior use. The latter two common law claims were dismissed by agreement at summary judgment. After prevailing at trial, the respondents presented requests for attorney fees that segregated the fees related to the statutory action from those related to the common law claims, but argued on various theories that they were also entitled to attorney fees for defending the common law claims.

The Walches contend on appeal that the court erred by finding that the claims were too interrelated to segregate and that the fee award was excessive. We agree that the claims could be segregated and reverse the trial court's finding that it was not appropriate to segregate. However, we see no abuse of discretion in assessing the amount of attorney fees for the defense of the statutory claim.

10

Initially, we agree with the Walches that RCW 8.24.030 does not apply to the common law claims. The statute applies to any actions "brought under the provisions of this chapter." RCW8.24.030. It does not thereby extend to all related claims. However, the trial court still has authority to grant the entirety of a fee request when it is impractical to segregate covered and noncovered claims. *Hume*, 124 Wn.2d at 673.

While that is how the trial court treated the requests here, it was not impractical to segregate the claims. The respondents did in fact segregate their requests. Indeed, the trial court also awarded fees to the respondents based on each category of claims. There were three distinct legal theories subject to different discovery and legal research efforts. It was not impractical to segregate. The trial court erred in concluding otherwise.

The Walches also challenge the reasonableness of the total fee award. We see no abuse of discretion. The Walches imposed significant costs on their neighbors who properly proved their defense costs, including the claims that were not subject to reimbursement under the statute. The Walches do not challenge the hourly rate charged by respective counsel. The court reviewed the time slips and properly applied the lodestar formula to calculate the fee award. The fees awarded each respondent were reasonable. The Walches sought an easement across commercial property owned by two parties and cannot now claim it was unreasonable for both respondents to fully contest the action at great expense to all.

The attorney fee awards for the defense of the statutory claim are affirmed; the awards under the statute for the defense of the common law claims are reversed.

*Common Law Theories.* Respondents also sought CR 11 sanctions in the trial court on the common law claims, arguing that they were brought without proper investigation. The trial court did not address this argument in light of its decision to grant fees under the statute. On appeal, the respondents reprise this argument as an alternative basis for affirming the fee award. The Walches contend that the argument cannot be addressed due to the failure of the respondents to cross appeal.

Only a party who has been aggrieved by a trial court action can appeal. RAP 3.1. The respondents were not aggrieved; the trial court awarded attorney fees on the common law claims. They had no basis for seeking affirmative relief. Instead, they properly raised the issue as an alternative basis for affirming the trial court. *Wolstein v. Yorkshire Ins. Co.*, 97 Wn. App. 201, 206-07, 985 P.2d 400 (1999).

This court is not in a position to decide the CR 11 issue in the absence of finding by the trial court. Since we have reversed the fee award under the statute for the common law claims, we remand this issue to the trial court for consideration of the respondents' CR 11 argument related to those claims.

*Attorney Fees on Appeal.* Finally, all parties seek attorney fees on appeal. The Walches seek fees for responding to the CR 11 argument. However, as that argument

12

was properly brought to this court, the Walches have not prevailed on that issue and there is no basis for awarding fees to them.

Respondents seek their attorney fees based on either RCW 8.24.030 or for responding to a frivolous appeal. This appeal was not frivolous. The Walches presented a debatable issue concerning the necessity of their private condemnation action. The statute does provide a basis for awarding fees to the respondents. However, at this point they have not substantially prevailed. While they have won on the merits of the private condemnation action, their attorney fee award has been reduced, at least temporarily.

If, on remand, respondents prevail on their CR 11 argument and regain their fees for the common law claims, the trial court also should award respondents their reasonable attorney fees for defending the appeal in this court. If they do not prevail on the CR 11 claim, then no party will receive any fees for the appeal.

Affirmed in part, reversed in part, and remanded.

No. 30129-0-III
Walch v. Clark

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.

14