# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| POTATO PATCH LLC, JOHN K. KENNEL MANAGING MEMBER, a Washington Limited Liability Company, | No. 49988-6-II |
| Appellant, | |
| v. | |
| DAVID GREER NIELSEN and RITA NIELSON, husband and wife; and EDWARD LUCKE and JOAN LUCKE, husband and wife; and JAMES STOVER and BONNIE STOVER, husband and wife; and WILLIAM TINNESAND and DEBORAH TINNESAND, husband and wife; and PENELOPE RADEBAUGH, a married woman as her separate estate; and JENNIE MOWATT, a single woman, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, A.C.J. — Potato Patch LLC (Potato Patch) owns a landlocked parcel of land in rural Jefferson County. The only feasible way for Potato Patch to access its property with a vehicle is through an abutting private road that travels through the property of Potato Patch's neighbors to the south. After its neighbors denied Potato Patch access to this road, Potato Patch filed a complaint seeking declaratory judgment that this private road was actually a public right of way conveyed to the County in 1943, or in the alternative, declaratory judgment granting Potato Patch a private way of necessity over the road.

No. 49988-6-II

Potato Patch appeals the superior court's dismissal of its claims on summary judgment and argues that: (1) there remained a genuine issue of material fact as to Potato Patch's private way of necessity claim, (2) there remained a genuine issue of material fact as to whether the abutting road is the 1943 public right of way, and (3) the superior court erred in failing to determine the precise location of the 1943 public right of way. We disagree and affirm.

FACTS

A.    BACKGROUND

1.    The Potato Patch Property

John and Melinda Kennell are the sole members of a limited liability company called Potato Patch LLC. Potato Patch's only asset is an undeveloped parcel of property in Jefferson County. The Potato Patch property is bordered to the East by the Hood Canal and to the North and West by areas of steep and unstable terrain. South of the Potato Patch property lies a residential community known as the Point Whitney Tracts. The Washington State Department of Fish and Wildlife owns the land to the south of the Point Whitney Tracts.

The Potato Patch property is inaccessible by public road. However, a road named Canyon Creek Road abuts the southern edge of the Potato Patch property, travels down through the Port Whitney Tracts, and across the State-owned land to the south. Canyon Creek Road connects to a southeast county road named Bee Mill Road. The owners of the tracts of land comprising the Port Whitney Tracts consider Canyon Creek Road to be private and have denied Potato Patch's request to access its property through Canyon Creek Road.

2

2.     The McGrew Right of Way

G. F. McGrew once owned the land that would eventually become the Point Whitney Tracts.  In 1943, McGrew conveyed by quit claim deed a public right of way over his land to Jefferson County.  The deed described the public right of way as:

> A right of way for road, from point where present county road enters their property, thence in a generally northerly direction to the north boundary of their property.  This road to follow the eastern boundary as near as possible except where natural obstacles prevent, all in SW ¼ NW ¼ Sec 7, Twp 26N, R 1 W., W.M.[1] situated in the County of Jefferson, State of Washington.

Clerk's Papers (CP) at 48.

In 1987, Marvin and Adelaide Lorenzen purchased the land that would eventually become the Point Whitney Tracts.  The deed to the property stated that the land was "[s]ubject to easement affecting a portion of subject property for road purposes in favor of Jefferson County as recorded Dec. 15, 1944, Auditor's File No. 103323, records of Jefferson County, Washington" (the McGrew right of way).  CP at 55.

However, according to Jefferson County, the McGrew right of way was never opened and is landlocked.  The McGrew right of way does not connect to any roads because McGrew sold the southern 165 feet of his property three years before granting Jefferson County the McGrew right of way.  The man who purchased the southern 165 feet of McGrew's property never granted Jefferson County a right of way.  Thus, according to the County, there is presently a 165 foot gap between the McGrew right of way and the nearest road (Canyon Creek Road).  The County does not intend to build a public road on the McGrew right of way because in order to do so, it would

---

[1] This is the current location of the Point Whitney Tracts.

need to obtain a deed or easement from the present owner of the property south of the Point Whitney Tracts that make up the 165 foot gap.

3.      Canyon Creek Road

In 1990, the Lorenzens settled a lawsuit that they had initiated against other landowners in the area.  The settlement provided that the defendants would grant the Lorenzens and their successors in interest "a non-restrictive easement for ingress, egress and utilities, thirty (30) feet in width, extending from the county road known as the Bee Mill Road to the real property of the [Lorenzens]."  CP at 56-57.

In 1991, the Lorenzens subdivided their property into the Point Whitney Tracts..  The survey plat creating the Point Whitney Tracts showed a "30 ft. easement for ingress, egress and utilities" beginning at Bee Mill road, traveling west, and then turning north through the Point Whitney Tracts. CP at 115.  The survey plat also identified this easement by reference to the 1990 settlement agreement between the Lorenzens and their then neighboring landowners.  This easement is Canyon Creek Road.

4.      The Duesing Properties

Two separate properties, referred to as the Duesing properties,[2] abut the southeast corner of the Potato Patch property and are accessible by a public county road.  Potato Patch acquired the

---

[2] The parties refer to these two properties as "the Duesing properties" because the Kennells purchased the properties from Carol Duesing in 2009.  Br. of Appellant at 6; Br. of Resp't at 6.  However, the Kennells also purchased the Potato Patch property from Duesing in 2009.  Even though Duesing no longer owns any of the property at issue in this case, for clarity, we refer to the two southeastern properties as the Duesing properties because both parties refer to the parcels under this name.  It is unclear from the record who purchased the Duesing properties from the Kennells.

Duesing properties at the same time it acquired the Potato Patch property. Potato Patch sold the Duesing properties in January 2014. As a term of sale, Potato Patch expressly relinquished any rights to an easement for ingress and egress it had over the Duesing properties.[3]

     5.     2010 Complaint against the State of Washington

In 2010, even though Potato Patch owned the Potato Patch property, the Kennells personally brought an action to quiet title to the portion of Canyon Creek Road crossing the State-owned land based on the theories of easement by prescription and easement by implication in an attempt to secure access to the Potato Patch property.[4] The superior court dismissed the Kennells' claims to a prescriptive and implied easement over the portion of Canyon Creek Road crossing the State-owned lands on summary judgment.

C.     THE COMPLAINT AGAINST NIELSEN

In November 2015, Potato Patch filed an amended complaint against David and Rita Nielsen, as well as the other present owners of the land comprising the Point Whitney Tracts[5]

---

[3] Had Potato Patch not affirmatively relinquished its rights to an easement over the Duesing properties as a term of the sale, it likely would have been able to reach the Potato Patch property through an implied easement by necessity over the Duesing properties. *See Visser v. Craig*, 139 Wn. App. 152, 158, 159 P.3d 453 (2007) ("An easement implied from necessity arises where a grantor conveys part of her land, and retains part and, after the conveyance, it is necessary to cross the grantor's parcel to reach a street or road from the conveyed parcel.")

[4] Three months before the Kennells filed this complaint, their lawyer sent the State a letter explaining that the Kennells had a "prescriptive easement claim with a private way of necessity alternate claim over Point Whitney Tracts." CP at 175. The Kennells never named the Point Whitney Tract owners as defendants in their 2010 lawsuit against the State.

[5] Potato Patch named as defendants David Greer Nielsen, Rita Nielsen, Edward Lucke, Joan Lucke, James Stover, Bonnie Stover, William Tinnesand, Deborah Tinnesand, Penelope Radebaugh, and Jennie Mowatt, all of which own tracts within the Point Whitney Tracts. We refer to the defendants collectively as Nielsen.

(Nielsen). Potato Patch requested a declaratory judgment establishing the existence, location, and scope of the McGrew right of way, or in the alternative, a declaratory judgment granting Potato Patch a private way of necessity over Canyon Creek Road, including the portion of Canyon Creek Road across the State-owned land. Potato Patch did not name the State of Washington as a defendant in its complaint.

Potato Patch alleged that its property was inaccessible from public road, and therefore, it was reasonably necessary for Potato Patch to obtain a private way of necessity to Canyon Creek Road over the Point Whitney Tracts. Potato Patch claimed that alternative routes to its property were impractical because the surrounding topography made it impractical and prohibitively expensive to build a road. Potato Patch also claimed a right to access and use the McGrew right of way, which it asserted still existed over the Point Whitney Tracts. Potato Patch later asserted that it was "logical to conclude" that the McGrew right of way became Canyon Creek Road because the McGrew right of way was never extinguished and the 1991 plat dividing the Port Whitney Tracts did not specify that Canyon Creek Road was private.[6] CP at 36.

D.     MOTION FOR SUMMARY JUDGMENT

In 2016, Nielsen moved to dismiss Potato Patch's claims on summary judgment. Nielsen argued that the McGrew right of way was inaccessible from any county road, and thus unusable. In support, he submitted a declaration from Susan Brandt, a title officer in Jefferson County. Brandt explained that McGrew had sold the southern 165 foot wide section of his property before

---

[6] Potato Patch moved for, and was denied, summary judgment on this issue, arguing that based on the undisputed facts, the court could conclude as a matter of law that Canyon Creek Road was the public McGrew right of way. Potato Patch does not appeal the superior court's order denying Potato Patch's motion for summary judgment on this basis.

granting the McGrew right of way to the County and that the purchaser never granted the County a right of way. Thus, there was a gap between the McGrew right of way and the nearest road, Canyon Creek Road. Brandt also stated:

> Jefferson County has no intention of building a road on the McGrew ROW now or in the future because the County would need a deed from the owners of Tract 1 of the Point Whitney Tracts for the south 165 feet . . . that was not conveyed to the County by McGrew.

CP at 99.

Brandt explained that the nearest road to the McGrew right of way was Canyon Creek Road. Brandt submitted a map depicting this 165 foot gap between the McGrew right of way and the portion of Canyon Creek Road traveling through the southern portion of the Point Whitney Tracts.

Nielsen also submitted a 2016 deposition in which Kennell was asked what road the 1943 deed granting the McGrew right of way referred to when it stated " 'from point where present county road enters their property.' " CP at 141. Kennell responded that he did not know what road the granting deed referred to through this description.

Nielsen further argued that Potato Patch's claims to an easement by necessity failed as a matter of law because Potato Patch sought to expand the scope of the easement over Canyon Creek Road, which could not be done without condemning the interests of the State as the servient estate. The Point Whitney Tract landowners argued that Potato Patch cannot increase the burden on State land by condemning a private easement across State land.

Finally, Nielsen argued that Potato Patch's private way of necessity claim should be dismissed because Potato Patch voluntarily landlocked its property and impermissibly sought to

develop the Potato Patch property. In support, Nielsen submitted a deed showing that Potato Patch had initially purchased the Duesing properties when it purchased the Potato Patch property. Potato Patch sold the Duesing properties in 2014. In connection with the sale, Potato Patch abandoned an easement it had granted to itself over the abutting property because the new "owners didn't want [Kennell's] pickup truck going through their property." CP at 246.

In Potato Patch's response to Nielsen's arguments, Kennell acknowledged that he had recorded an easement over the property he formerly owned to the southeast, but claimed that the easement was for beach access, not legal road access. Kennell also claimed that a creek flows through the eastern portion of the Point Whitney Tracts, and therefore, a road could not be built without bridging a very steep ravine. Kennell cited this as evidence that the McGrew right of way was not on the eastern portion of the Point Whitney Tracts, and thus, there was a logical inference that Canyon Creek Road is the McGrew right of way.[7]

Potato Patch argued that there remained a factual dispute as to the exact location of the McGrew right of way and whether the McGrew right of way was relocated to Canyon Creek Road. As to the private way of necessity claim, Potato Patch submitted the affidavit and report of Dan McShane, a geologist who had surveyed the Potato Patch property and assessed possible access routes. McShane concluded that the slopes surrounding the Potato Patch property were unstable

---

[7] Nielsen also argued that Potato Patch's private way of necessity claim over Canyon Creek Road should be dismissed because the State of Washington was a necessary party, but any claim against the State would be barred because Potato Patch had already brought an action against the State for an easement by prescription and implication over Canyon Creek Road in 2010, which was dismissed on summary judgment. Kennell responded by admitting that he recognized in 2010 that he had a claim for private way of necessity over the Point Whitney Tracts, but he wanted to first obtain access over the McGrew right of way before filing an action against the State and opined that the State might be willing to sell him an easement in the future.

and road construction was "ill advised due to the geologic conditions and slope gradients." CP at 66. As a result, Canyon Creek Road was " the best and most logical access to the Potato Patch parcel." CP at 66.

The superior court granted Nielsen's motion for summary judgment. Potato Patch appeals.

ANALYSIS

A.      LEGAL PRINCIPLES

We review the grant of summary judgment de novo and engage in the same inquiry as the superior court. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). Like the trial court, we consider all facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We will uphold a grant of summary judgment only if, from all the evidence, reasonable minds could reach but one conclusion. *Staples v. Allstate Ins. Co.*, 176 Wn.2d 404, 410, 295 P.3d 201 (2013). We may affirm summary judgment on any basis supported by the record. *Steinbock v. Ferry County Pub. Util. Dist. No. 1*, 165 Wn. App. 479, 485, 269 P.3d 275 (2011).

The moving party in a summary judgment motion bears the initial burden of showing the absence of a genuine issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this initial burden, then the inquiry shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of

the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). If the opposing party fails to make a showing sufficient to establish a genuine issue of material fact, then summary judgment is appropriate. *Young*, 112 Wn.2d at 225.

B.      SUMMARY JUDGMENT AS TO PRIVATE WAY OF NECESSITY

Potato Patch argues that summary judgment should not have been granted on its private way of necessity claim over Canyon Creek Road because it presented evidence that Canyon Creek Road was the most feasible route to access the Potato Patch property. We disagree.

RCW 8.24.010 allows a landowner to condemn a private way of necessity over the land of another if it is necessary for the proper use and enjoyment of his or her land.[8] This statute is based on a "public policy against rendering landlocked property useless." *Brown v. McAnally*, 97 Wn.2d 360, 367, 644 P.2d 1153 (1982). While the necessity to condemn another's land need not be absolute, it must be " 'reasonably necessary under the facts of the case, as distinguished from merely convenient or advantageous.' " *Ruvalcaba*, 175 Wn.2d at 7 (quoting *Brown*, 97 Wn.2d at 367). The party seeking to condemn another's land bears the burden of proving reasonable necessity and demonstrating that the route selected is the most reasonable alternative. *Kennedy v. Martin*, 115 Wn. App. 866, 869-70, 65 P.3d 866 (2003). Once this showing is made, the burden shifts to the potential condemnee to show that a feasible alternative is more equitable. *Id.* at 870.

---

[8] "An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity or to construct and maintain any drain, flume or ditch, on, across, over or through the land of such other, for agricultural, domestic or sanitary purposes, may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity, or for the construction and maintenance of such drain, flume or ditch, as the case may be." RCW 8.24.010.

A landowner cannot acquire a private way of necessity across State-owned lands pursuant to RCW 8.24. *Jobe v. Weyerhaeuser Co.*, 37 Wn. App. 718, 725, 684 P.2d 719, *review denied* 102 Wn.2d 1005 (1984). However, an existing easement held by a private party over State land is separate from the State's fee interest and is therefore subject to condemnation under RCW 8.24.[9] *Granite Beach Holdings, L.L.C. v. Dep't. of Nat. Res.*, 103 Wn. App. 186, 203, 11 P.3d 847 (2000).

A landowner cannot condemn a private way of necessity in an existing easement over State-owned land if doing so would expand the servitude placed upon the State lands. *Id.* at 203-04. In *Granite Beach Holdings*, the owner of a landlocked parcel sought to condemn joint use of an existing private easement across State-owned land. *Id.* at 194. Because the landowners sought to be added to the private easement, rather than be substituted for the easement holders, the court held that such action would increase the burden on the servient owner's interests. *Id.* at 204. The court held that increasing such burden "[could not] be done without condemning that owner's interest in whole or in part." *Id.*

Here, Potato Patch sought an order declaring a private way of necessity "over the Canyon Creek Road easement" across the Point Whitney Tracts and State-owned land. CP at 11. The Canyon Creek Road easement was appurtenant to the real property comprising the Point Whitney Tracts and limited to "ingress, egress and utilities." CP at 56. Potato Patch does not dispute that

---

[9] Potato Patch frames this as a "limited exception" to the general rule that a landowner cannot condemn State-owned lands. Reply Br. of Appellant at 14. We note that this is not an exception allowing a private party to condemn State-owned lands for private use. *See Weyerhaeuser*, 37 Wn. App. at 725; *Granite Beach Holdings*, 103 Wn. App. at 204. Rather, we have held that a private party may condemn another party's interest in an existing easement over State-owned land because such easement is separate from the State's fee interest. *See State ex rel. Polson Logging Co. v. Superior Court*, 11 Wn.2d 545, 559-60, 119 P.2d 694 (1941); *Granite Beach Holdings*, 103 Wn. App. at 203.

it sought to condemn a private way of necessity in an existing easement the Point Whitney Tract owners held over the State lands. Because Potato Patch sought to be added to the Canyon Creek Road easement over State lands, rather than substituted for the easement holders, such action would increase the burden on the State's interests. This cannot be done without condemning the State's interest in whole or in part. *See Granite Beach Holdings,* 103 Wn. App. at 204.

Potato Patch argues that granting a private way of necessity in the existing easement would not "unduly expand" the number of parties using the easement. Reply Br. of Appellant at 15. However, the relevant inquiry is whether such action effects an increased burden on the servient owner's interests, not an undue burden. *Granite Beach Holdings*, 103 Wn. App. at 204. Increasing the servitude placed upon the State lands, even by just one party, constitutes an increased burden on the servient owner's interests. *See id.* Thus, Potato Patch may have provided evidence showing that Canyon Creek Road was the most feasible route to access its property, but its private condemnation action still could not achieve the access it sought without impermissibly condemning the State's interests.

Nonetheless, Potato Patch appears to argue that it should still be able to condemn only the portion of Canyon Creek Road that crosses the Point Whitney Tracts, even if it cannot access the portion of Canyon Creek Road that crosses State land. Acknowledging that such action would still render the Potato Patch property inaccessible, Potato Patch asserts that it intends to obtain access over the remainder of Canyon Creek Road if it prevails in this case. Potato Patch contends that it should be able to seek access to its landlocked property in a piecemeal fashion by securing access to different portions of Canyon Creek Road through separate negotiations or separate lawsuits.

"[T]he statute which gives a landlocked owner a way of necessity over lands of a stranger is not favored in law and thus must be construed strictly." *Brown*, 97 Wn.2d at 370. The necessity to condemn another's land must be " 'reasonably necessary under the facts of the case.' " *Ruvalcaba*, 175 Wn.2d at 7 (quoting *Brown*, 97 Wn.2d at 367). Potato Patch cannot show reasonable necessity to condemn only the portion of Canyon Creek Road in the Point Whitney Tracts when doing so would still leave its property landlocked.[10] RCW 8.24 does not allow Potato Patch to seize a property interest in another's land on the conditional hope of encumbering another stranger's land in the future.

Because Potato Patch cannot demonstrate reasonable necessity in condemning only a portion of Canyon Creek Road, and also cannot condemn the portion of Canyon Creek Road crossing State lands and possibly the 165 foot gap owned by some unknown person, summary judgment was appropriate.[11]

---

[10] Potato Patch's property would remain landlocked even if Canyon Creek Road across Point Whitney Tracts is condemned because Kennells' 2010 suit against the State seeking an easement by prescription or implication over Canyon Creek Road on the State's property was dismissed on summary judgment.

[11] Potato Patch also directs argument at the specific reasoning of the superior court in granting summary judgment. Because our review is de novo, the superior court's "[f]indings of fact and conclusions of law are not necessary on summary judgment, and, if made, are superfluous." *Concerned Coupeville Citizens v. Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243, *review denied*, 118 Wn.2d 1004 (1991). Thus, we do not consider any assignment of error on this basis.

Nielsen also argues that we may affirm summary judgment based on other legal theories called to the attention of the trial court, including collateral estoppel. Potato Patch made several factual representations in response to Nielsen's collateral estoppel argument in its reply brief. Potato Patch later informed this court that one of its factual representations on this issue was incorrect and asked us to allow Potato Patch to file a corrected reply brief. We granted this motion and accepted the corrected reply brief. However, because we affirm summary judgment on other grounds, we need not address this issue further.

C.    SUMMARY JUDGMENT AS TO THE LOCATION OF THE MCGREW RIGHT OF WAY

Potato Patch argues that the superior court erred in dismissing its request for a judicial determination of the location of the McGrew right of way because (1) Potato Patch produced sufficient evidence to support a reasonable inference that the McGrew right of way became Canyon Creek Road, and (2) the superior court should have made a judicial determination as to the precise location of the McGrew right of way. We disagree.

1.      Evidence the McGrew Right of Way Became Canyon Creek Road

In determining the original parties' intent in an easement, we consider the instrument as a whole. *Rainier View Court Homeowners Ass'n, Inc. v. Zenker*, 157 Wn. App. 710, 720, 238 P.3d 1217 (2010), *review denied*, 170 Wn.2d 1030 (2011). We will not consider extrinsic evidence of intent if the plain language of the instrument is unambiguous. *Id.* If an ambiguity exists in the instrument, then we may consider extrinsic evidence of the parties' intent, including the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' past conduct. *Id.*

Here, the only instrument Potato Patch provided to support the alleged creation of the Canyon Creek Road easement was the 1990 settlement agreement between the Lorenzens and the previous landowners in the area. Given that the County was not a party to this agreement, it does not show the County's intent to open the McGrew right of way and locate it on Canyon Creek Road.

In fact, the only evidence of the County's intent regarding the McGrew right of way was through Brandt's declaration, which Nielsen submitted in moving for summary judgment. Brandt explained that the McGrew right of way was presently landlocked and that the County had "no

intention of building a road on the McGrew [right of way] now or in the future." CP at 99. Therefore, Nielsen met his initial burden of showing an absence of a genuine issue of material fact as to whether Canyon Creek Road was the McGrew right of way.

Nonetheless, Potato Patch contends that it presented sufficient evidence for a reasonable fact finder to conclude that the County intended the McGrew right of way to become Canyon Creek Road. Potato Patch relies on the undisputed evidence that (1) the deed conveying the McGrew right of way failed to specify its precise location, (2) the County approved the Point Whitney Tracts plat subdivision, which did not identify the McGrew right of way, and (3) an access road could not be practicably built on the eastern boundary of the Point Whitney Tracts due to a steep ravine.

"Mere allegations, argumentative assertions, conclusory statements, and speculation do not raise issues of material fact that preclude a grant of summary judgment." *Greenhalgh v. Dep't. of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). The 1943 deed conveying the McGrew right of way to the County stated that the McGrew right of way would begin at the "point where present county road enters their property" and "follow the eastern boundary as near as possible except where natural obstacles prevent." CP at 48. Potato Patch did not provide any evidence as to where the "present county road" entered the property in 1943, nor did Potato Patch provide any evidence as to what constituted "as near as possible" to the eastern boundary of the Point Whitney Tracts in 1943. When deposed in 2016, Kennell stated that he did not know what point the 1943 deed referred to when it stated " 'from point where present county road enters their property.' " CP at 141.

15

A reasonable fact finder could not conclude that the County intended Canyon Creek Road to serve as the McGrew right of way when Potato Patch did not provide any evidence of such intent and did not provide any evidence showing what points the 1943 deed referred to when describing the McGrew right of way. And evidence that a road could not be built on the most eastern border of the Point Whitney Tracts could not allow a fact finder to speculate that Canyon Creek Road must be the 1943 McGrew right of way. There is no basis to infer that the County intended to open the McGrew right of way by approving a survey plat, prepared at the request of a third party, which did not identify the McGrew right of way.

Viewing the facts in the light most favorable to Potato Patch, they do not support a reasonable inference that the County intended for Canyon Creek Road to be the McGrew right of way. Therefore, Potato Patch fails to show the existence of a genuine issue of material fact, and summary judgment was appropriate on this basis.

2.      Judicial Determination as to the Location of the McGrew Right of Way

Potato Patch contends that the superior court had a duty under the Uniform Declaratory Judgment Act to determine the precise location of the McGrew right of way on the Point Whitney Tracts. According to Potato Patch, a justiciable controversy existed between itself and Nielsen as to the location of the McGrew right of way. We disagree.

The Uniform Declaratory Judgments Act allows courts "to declare rights, status and other legal relations whether or not further relief is or could be claimed." RCW 7.24.010. A party invoking the jurisdiction of the court under the Uniform Declaratory Judgment Act must present a justiciable controversy. *Kitsap County v. Kitsap County Corr. Officers Guild, Inc.*, 179 Wn. App. 987, 994, 320 P.3d 70 (2014). A justiciable controversy is:

"(1) . . . an actual, present[,] and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract[,] or academic, and (4) a judicial determination of which will be final and conclusive."

*Id.* (alteration in original) (quoting *City of Longview v. Wallin*, 174 Wn. App. 763, 777-78, 301 P.3d 45, *review denied*, 178 Wn.2d 1020 (2013)).

Potato Patch argues that a justiciable controversy existed between itself and Nielsen because the parties disputed the location of the McGrew right of way. However, the record shows that the only dispute between Nielsen and Potato Patch as to the location of the McGrew right of way was whether the McGrew right of way was located on Canyon Creek Road. Nielsen never disputed that the McGrew right of way still existed somewhere on the Point Whitney Tracts. As explained above, the superior court did not err in dismissing Potato Patch's claim that Canyon Creek Road was the McGrew right of way. Potato Patch failed to present any evidence of the precise location of the McGrew right of way. The only evidence before the superior court was that the right of way was located somewhere on the Point Whitney Tracts with a 165 foot gap owned by some unknown person.[12] CP at 48, 89-99. Therefore, we hold that Potato Patch's claim on this basis fails.

---

[12] To this point, Potato Patch argues that the trial court should have determined the location of the easement by applying the factors outlined by the Wisconsin Court of Appeals in *Spencer v. Kosir*, 2007 WI App 135, ¶ 13, 301 Wis.2d 521, 529, 733 N.W.2d 921. However, Potato Patch fails to explain why we should adopt the reasoning of another jurisdiction and impose such requirement on the superior court. And Potato Patch fails to present any authority showing that Washington courts share the Wisconsin courts' "inherent power to affirmatively and specifically determine [an easement's] location, after considering the rights and interests of both parties." *Spencer*, 301 Wis.2d at 529.

No. 49988-6-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Bjorgen, J.

_____
Melnick, J.